18414. WALTON COUNTY BANK *et al.* v. STANTON *et al.*

STEPHENS, J. 1. A contract entered into by the stockholders of a bank in contemplation of its merger with another bank and as a condition precedent to the merger, by which the stockholders agreed that "if at the final settlement of the notes of" named persons ·who owed an indebtedness evidenced by notes to the first bank, "there should be any

loss sustained" by that "bank or the consolidated or merger bank," the stockholders would pay this loss, was a contract of indemnity, obligating them for any loss sustained upon a final settlement of that indebtedness, notwithstanding that in the meantime the existing notes may have been renewed from time to time, provided the bank in renewing the notes acted in good faith and in the interest of the bank, and provided that any loss at the final settlement, caused by a delay in foreclosing or in making the settlement, due to a renewal or extension of time of payment, was not caused by negligence or lack of ordinary care by the authorities of the bank in handling the transaction. The liability of the obligors under this contract was not terminated by reason of renewal of the notes without notice to the obligors or without their consent.

2. The failure of a signatory party to a contract to become bound by reason of legal inability to make a contract,—as the inability of a partner executing the contract in behalf of the partnership to bind the partnership, or some infirmity in such person's execution of the contract,—does not amount to a release of the person from liability, and therefore can not, as a release of one jointly bound, operate as a release to the co-obligors.

3. A settlement of the indebtedness represented by the notes, by an acceptance of property by the bank from the makers in payment of the indebtedness, amounts to a settlement and discharge of the indebtedness, and to a release of the obligors under the contract of indemnity. This is true notwithstanding some of the obligors may have been members of the board of directors, or consented to the settlement, provided, in so doing they committed no fraud on the bank. If the settlement was made bona fide and the bank received full value in payment of the indebtedness, there was no fraud as against the bank upon the part of the directors consenting thereto, who were parties to the contract of indemnity, and they therefore, under such circumstances, would not be estopped from setting up the settlement as a release of their liability under the contract of indemnity. *Ruffner* v. *Sophie Mae Candy Corporation*, 35 *Ga. App.* 114 (4) (132 S. E. 396).

4. If, however, the property received by the bank in settlement of the indebtedness represented by the notes was not reasonably worth the amount of the indebtedness, its acceptance by the officers of the bank in full settlement of the indebtedness, if not done bona fide and in the interest of the bank, amounted to a fraud upon the bank; and the guarantors upon the contract of indemnity, who were directors of the bank, unless they were not responsible for the contract of settlement, would be estopped from setting up the settlement in discharge of their obligations on the contract of indemnity. See article 19, section 11 of the banking act approved August 16, 1919 (Ga. L. 1919, pp. 135, 196).

5. The alleged settlement, even if a fraud as to the guarantors who were at the time directors of the bank, was nevertheless good as to the guarantors who were not directors and who in no way participated in the transaction. The latter could set up the settlement in discharge of their obligation under the contract by which they guaranteed the debt which had been settled.

6. Where, by virtue of the alleged agreement of settlement between the

bank and the makers of the notes, the bank accepted certain property in payment of the indebtedness, and at the same time, and as part of the consideration, agreed with the makers of the notes to resell the property to them for a sum equal to the indebtedness represented by the notes, and afterwards did sell the property to them, retaining title thereto and taking from them new notes in amounts representing the amount of the indebtedness represented by the original notes, the inference is authorized that this transaction did not constitute a cancellation or settlement of the original indebtedness, but amounted only to an extension of the time of payment of the original indebtedness, with the property as security for its payment.

7. Where, by the by-laws of a banking corporation, the board of directors of the corporation have the management and control of its business, the authority of the president and cashier of the bank to make contracts of settlement for indebtedness due to the bank and to agree to the extension of time to the debtors of the bank, is the authority of the board of directors. Where the president and cashier, acting for and in behalf of the bank, negligently receives and accepts, in settlement of an indebtedness to it, property of a less value than the indebtedness, or negligently causes a loss to the bank by failure to foreclose or realize on property pledged to it as security for the indebtedness, by consenting to a renewal of the notes extending the indebtedness, and thereby extending the time for the payment of the indebtedness, the members of the board of directors, who have on their own account guaranteed the bank against loss upon the indebtedness, can not, in a suit against them by the bank upon their contract of guaranty, defend by setting up any failure of duty or any negligence on the part of the bank, through its president and cashier, as respects the alleged settlement or renewal of the indebtedness by which the bank suffered loss, unless the directors can show that the authority of the president and cashier to act in the matter, as respects the indebtedness guaranteed by the individual directors, was conferred upon the president and cashier by action of the board of directors in which the guaranteeing directors themselves did not participate. See, in this connection, *Swindell* v. *Bainbridge State Bank*, 3 *Ga. App.* 364, 370 (60 S. E. 13).

8. Where the security pledged for payment of the notes consisted of lands and farm equipment, which deteriorated in value, and this fact was known to the bank when renewing the notes, a renewal of the notes and a failure of the bank to foreclose and realize upon the collateral without delay is evidence of negligence upon the part of the bank, causing a loss in the final settlement of the indebtedness represented by the notes, and the amount of loss in the settlement of the indebtedness sustained by the bank as a result of this negligence would be chargeable against the bank, and not against the obligors on the contract of indemnity, unless they, by reason of being directors of the bank, be regarded as consenting to the acts of the officers which caused the loss.

9. This being a suit by the superintendent of banks of this State, in behalf of the merger bank which he had taken over for liquidation, to recover upon the contract of indemnity against the signatory parties thereto for the loss alleged to have been sustained upon the final settlement of the indebtedness represented by the notes, wherein the defendants

pleaded a settlement of the indebtedness represented by the notes by an acceptance by the merger bank of property from the makers of the notes, and also pleaded that the loss, if there was any, sustained upon a final settlement of the indebtedness represented by the notes, was occasioned by the negligence of the merger bank in renewing the indebtedness in the face of a decline in the value of the securities, and by delay in foreclosing and realizing upon the securities, and the evidence authorizing an inference that, at the time of the alleged settlement of the indebtedness by the bank's taking over in settlement thereof certain property from the makers of the notes, the property was not worth the amount of the indebtedness, and that the bank was negligent in renewing the indebtedness represented by the notes, and in deferring a foreclosure upon the pledged property, and the evidence further authorizing the inference that certain of the defendants, who were signatory parties to the contract sued on, were directors of the bank, and, as such, authorized or acquiesced in the acts of the officers of the bank respecting the indebtedness represented by the notes, the court erred in charging the jury that if any loss was sustained by the plaintiff bank on account of the notes guaranteed by the contract sued on, and if this loss was due to negligence of the officers and agents of the plaintiff bank, there could be no recovery. The court also erred in failing to charge, on timely written request of the plaintiff, not covered by the general charge, as follows: "If it appears from the evidence that any of the defendants were directors of the Walton County Bank, then they can not by any act of theirs, either in settling said Sigman notes or the renewal thereof, during the life of contract, defend against its terms or its provisions if, in point of fact, the Walton County Bank did sustain a loss. Directors of a bank act for it and not against it. They occupy a fiduciary relation to the bank. They can not act so as to cause it loss, if a loss was sustained. If they so act, they will not be released from the terms of this contract, even though other defendants, not directors, might be released, and you would have to find against them, even though you did not find against others who were not directors."

10. Where at a conference between the superintendent of banks, representing the plaintiff, and attorneys representing the defendants, it was expressly agreed between them that nothing said or done in this conference should in any wise affect the liability of any of the defendants, or in any wise affect the right of the plaintiff to recover on the contract sued on, the court did not err, in the conduct of the trial in giving force and effect to this agreement. Evidence offered by the plaintiff, to the effect that it appeared at this conference that it was thought best by the defendants as stockholders in the plaintiff bank that a suit to foreclose upon the notes which they had guaranteed by the contract sued on should be deferred until a later date, was, when offered as evidence tending to relieve the plaintiff of the charge of negligence as respects its efforts to realize upon the securities pledged for the payment of the notes, properly rejected.

11. Since the value of the property alleged to have been taken over by the plaintiff bank in settlement of the notes was a material fact, and also since it was material whether or not the bank, in thus taking over the property, bona fide considered it to be equal in value to the indebtedness

represented by the notes, and was therefore not negligent, evidence tending to establish these facts was relevant and properly admitted.

12. Since the value of property may be established by the opinion of a witness as to its value, an objection to such an opinion, upon the ground that the value of the property can not be proved in this manner, is without merit.

13. Where the former president of the plaintiff bank testified that at the time when the property was taken over by the bank it was worth approximately the value of the indebtedness represented by the notes, the admission in evidence of extrajudicial statements, made by him on different occasions, that the property was worth the amount of this indebtedness, even if inadmissible, as being hearsay, was harmless.

14. Testimony of one of the directors of the bank that, from information which he had received from the president of the bank, the witness "understood" that the bank, after the transaction which it is alleged amounted to an acceptance of the property pledged in payment of the indebtedness, "had sold the property back to" the makers of the notes, was testimony as to information received by the witness from the president of the plaintiff, and, not being admissible as an admission by the bank, was inadmissible, as being hearsay. This evidence tending to establish a material fact in issue, and in support of the verdict rendered for the defendant, viz. a sale of the pledged property to the bank by the makers of the notes, its admission in evidence was harmful to the plaintiff.

15. It is not within the scope of the business of a partnership which conducts a banking business to enter into contracts of security or indemnity, even in its own interest,—as by the execution of a contract of indemnity as above set out,—although the partnership may be a stockholder in the bank. One partner in the banking partnership therefore did not, by virtue of being a partner, have any implied authority to bind the partnership, or the other partners, to the contract of indemnity. The court therefore properly directed a verdict in favor of the Bank of Jersey and those partners therein who were not signatory parties to the contract of indemnity, viz. J. A. McGarity, J. L. McGarity, and Mrs. W. L. Blasingame, executrix.

16. By reason of the errors indicated in paragraphs 9 and 14 above, the court erred, prejudicially to the plaintiff, as respects the remaining defendants, and as to them the verdict found for the plaintiff will be set aside and a new trial granted.

*Judgment affirmed in part and reversed in part. Jenkins, P. J., and Bell, J., concur.*

DECIDED SEPTEMBER 17, 1928.

*Orrin Roberts, C. N. Davie, J. F. Kemp,* for plaintiffs.
*S. Holderness, E. W. Roberts, M. W. Lewis, J. B. Gamble, R. H. Kimball, H. C. Cox,* for defendants.