562, 563, 564. SWINDELL & COMPANY *v.* BAINBRIDGE
STATE BANK.

1. By statute, no bank or corporation doing a banking business in this State is allowed to lend to any one person more than ten per cent. of its capital stock and surplus, unless the loan is amply secured by good collateral security. Therefore, to entitle one to recover damages because of a failure of a bank to lend him an amount promised, it must be alleged and proved that the amount so promised did not exceed ten per cent. of the capital stock and surplus of the bank, or that the loan was to be amply secured by good collateral security.

2. The cashier of a bank, unless authorized by the charter or by-laws, has no authority to lend the money of the bank. The bank can not be held liable in damages for a breach of a contract entered into by the cashier to lend its money, without authority from the bank, and in direct violation of the banking laws of the State.

3. An act positively forbidden by statute can not be made legal and binding by ratification or estoppel. Therefore, where the cashier of a bank entered into a contract to lend to one person more than ten per cent. of its capital stock and surplus, said loan not to be amply se-

cured by good collateral security, the contract could not be rendered legal by ratification or binding by estoppel.

4. Allegations that a bank had agreed to lend defendants $20,000, from time to time as they might desire the money, and that the bank had, in pursuance of such agreement, loaned them $18,000, but had refused to lend the additional $2,000, which refusal resulted in damage to the amount of $20,000, because of the inability of the defendants to make immediately other financial arrangements, and because of its making necessary the cancellation of valuable contracts and the curtailment of business, are too general, vague, indefinite, and uncertain. The amount· and duration of each loan should be given, the extent of the delay in making other financial arrangements should be stated, and it should appear specifically how the failure to get the additional $2,000 resulted in the damage .claimed.

5. The president of a bank has no power to bind it, except in the discharge of his ordinary duties; and it is not one of his ordinary duties· to release debtors of the bank from the payment of their obligations to it. Release from the payment of notes executed to the bank is made under the authority of the directors; and an unauthorized agreement by the president of the bank, that the maker of promissory notes made payable to the bank shall be released from payment, does not bind the bank.

6. Where ratification by the bank of an unauthorized agreement made· by its president, to release its debtor, is relied upon, some specific act or acts of ratification should be alleged. If acquiescence in and benefits from such unauthorized agreement are relied upon as an estoppel,. knowledge of such agreement, by the directors of the bank, and the beneficial results accruing to the bank under the agreement, must be alleged and proved. Mere . delay in enforcing .payment of notes does not tend to show a ratification of an unauthorized agreement to release from payment.

7. The pleas set up· no defense, and were properly stricken on demurrer; and the judgment rendered for the plaintiff, on the notes, was in accordance with law.

Complaint, from city court of Bainbridge—Judge Harrell.. April 29, 1907.

Argued October 28, 1907.—Decided January 15, 1908.

*Bower & Bower, R. G. Hartsfield,* for plaintiffs in error.

*Russell & Hawes,* contra.

HILL, C. J. The Bainbridge State Bank brought three suits against Swindell & Company, a partnership, as makers, and the other defendants as indorsers, on certain promissory notes, the suits being for the principal of the notes, with interest and attorneys' fees, and the petition alleging that notice of an intention to· bring suit had been given to the defendants as provided by the statute. Swindell & Company filed pleas which, as amended, set.

up substantially the following facts: that Swindell, a member of said partnership, made an agreement with one Perry, the cashier of the bank, that the bank would lend to the defendants, from time to time, money up to the limit of $20,000 in such amounts as said firm might desire, the loans to be evidenced by the notes of said firm; and the defendants agreed to give to the bank all their domestic business, which amounted to a very large sum; that the bank, in pursuance of this agreement, did lend the defendants between $16,000 and $18,000, and refused to lend them the balance of the $20,000, and by such refusal damaged the defendants in the sum of $20,000, as, by such refusal, they were compelled to cancel contracts and to operate their business at a loss for a lack of funds, and were compelled also to curtail their business; all of which results were caused by the breach of the bank's contract to lend said firm the sum of $20,000; that on the refusal of the bank to lend the additional amounts up to $20,000, Swindell & Company notified the president of the bank that they would sue the bank for damages, and the said president thereupon agreed that if they would not sue the bank, the bank would not sue them on their promissory notes which the bank held. The damages were set up by way of recoupment against said notes; and the agreement not to sue the firm, made by the president of the bank, was set up as a complete release from the notes sued on. Demurrers, both general and special, to the original pleas and to the pleas as amended, were sustained and the pleas stricken. The judgment sustaining these demurrers and striking the pleas is brought to this court for review.

1. The agreement alleged to have been made by the cashier of the bank, to lend Swindell & Company $20,000, was in violation of section 1916 of the Civil Code of 1895, unless the capital and surplus of the bank amounted to $200,000 or more, or unless the loan was to be amply secured by good collateral security. A special demurrer was filed to the plea on the ground that it did not set up that the plaintiff bank had a sufficient capital and surplus to authorize the agreement to lend $20,000, or that the loan was amply secured by good collateral security. This court would judicially know that the capital stock of this bank was less than $200,000. It would not judicially know whether the capital stock and surplus amounted to $200,000. Therefore, this was good

ground for special demurrer; and as no amendment was made to meet this defect, the plea was properly stricken. An affirmative plea such as the one in question, lacking in certainty or definiteness, is subject to special demurrer pointing out such defect: *Atlantic Coast Line R. Co.* v. *Hart Lumber Co., 2 Ga. App.* 88 (58 S. E. Rep. 316). The alleged contract, therefore, to lend the defendants $20,000, being in positive violation of the express terms of the statute, could not constitute a valid defense; and as such illegal contract is relied upon as the foundation of the defense, the entire superstructure erected thereon must fall. This court might well content itself with this declaration of the law; but besides this mortal malady, there are several other serious infirmities in the defense.

2. The cashier of the bank had no authority to make an agreement to lend $20,000 of the bank's money. If he had such authority, what limitation was there upon his right to lend all of the bank's assets to one individual? The direction of the bank is in its board of directors, and even if the directors could delegate to a merely ministerial officer, such as a cashier, their legislative and judicial functions, they could not do so unless expressly so authorized either by the general law or by the charter or by-laws of the bank. It is not claimed that the charter or by-laws of the plaintiff bank authorized its board of directors to make an agreement such as is relied upon as a defense in this case. But even if such authority was conferred by the charter of the bank upon the directors, it would be void in this case, because in positive violation of the terms of the general law as contained in the Civil Code, §1916. 4 Thomp. Corp. §§4742, 4743, 4750, 4752; 5 Cyc. 466; Durkee v. People, 155 Ill. 354 (46 Amer. St. Rep. 340). Of course, if the bank had no authority through its directors to make such a contract, the cashier could not have such authority. It therefore clearly follows that the bank could not have been held liable in damages for any breach of an agreement which the cashier had made with the defendants without authority from the bank and in direct violation of the banking laws of this State. This would be to give to the cashier greater authority than the law gives to its creature, the bank itself.

3. It is insisted that the contract which the cashier made was ratified by the bank, with full knowledge of its terms and condi-

tions; and that the bank, having received the benefit of such contract, in securing the business of Swindell & Company, is estopped from denying or repudiating the contract. Notice of the powers and legal capacity of a corporation is indisputably imputed to all persons contracting with it. Elevator Co. *v.* Memphis Railroad Co., 85 Tenn. 703; Jemison *v.* Savings Bank, 122 N. Y. 135. The section of the Civil Code, supra, put Swindell & Company on notice that the agreement made by the cashier to loan them $20,000 was illegal. This law is for the benefit of the public as well as for the stockholders, and the power to ratify an agreement which a corporation has no power to make can not exist; nor can the stockholders of a corporation or the directors of a corporation, by acquiescence or express agreement, ratify any contract made by any officer or by the corporation itself which the law expressly forbids; nor can a contract made by the corporation or by any officer of the corporation, against a statute expressly forbidding such contract, become valid and effective through an estoppel. A corporation may be estopped from asserting that a contract is ultra vires, where it has received a benefit under the contract, only where the making of such contract was within the scope of the corporate franchise, and not repugnant to the general law, and such contract is sought to be avoided because there was a failure to comply with some regulation, or the corporate power was improperly exercised. We are aware of no case which goes to the extent of holding that there can be an estoppel where the contract could not lawfully be made by the corporation. Davis *v.* Old Colony Railroad Co., 131 Mass. 258; Durkee *v.* People, 155 Ill. 354.

4. We do not think the plea alleges enough to entitle the defendants to recover for a breach of the agreement to lend the $20,000. It does allege generally that on account of not getting the full amount agreed to be loaned, the defendants had to cancel many valuable contracts, and had to curtail and operate their business at a loss for lack of funds, and that it was impossible for them to make immediately other fiscal arrangements, and before they were able to do so they were damaged the sum of $20,000. No allegation is made that the bank agreed to lend the $20,000, or any part thereof, for any definite time. Where there is a mere contract to lend, and no date is fixed for the maturity of the loan, repayment is due immediately. In this case, so far as

any allegation to the contrary is made, the loans to be made by the bank were to be repaid immediately; and "damages for failure to receive that which would have to be at once returned would be nothing." *Anderson* v. *Hilton & Dodge Co.*, 121 *Ga.* 692. The plea should show that the loans were for some definite time, and for such periods of time as would have warranted the defendants in relying upon the loans as a source of revenue for the conduct of their business. The allegations that the failure to get the additional $2,000 of a promised loan of $20,000, where the defendants had already received $18,000 of this loan, had damaged them $20,000, because they were unable immediately to make other arrangements to finance their business, somewhat taxes credulity, without particulars showing how such apparently disproportionate amount of damage resulted. The plaintiff was also entitled to be informed by the plea specifically as to what valuable contracts the defendants were forced to cancel, and how and in what manner they were compelled to curtail their business because of a failure to get the additional $2,000 from the bank. The allegations as to damages are entirely too vague and indefinite; and such defects, being pointed out by special demurrer, should have been supplied by amendment, or the plea stricken.

5. When the bank refused to lend the firm the additional $2,000 to make the aggregate of the loans $20,000 according to the alleged contract made by the cashier of the bank, the firm threatened to sue the bank for $20,000, as damages arising from this refusal. The plea alleges that, to avoid the suit for damages, the president of the bank made an oral agreement with Swindell, of said firm, that if the firm would not sue the bank for damages, the bank would not sue them on their notes executed to the bank for the loans. It is alleged that this agreement was fully executed by both parties, and that the bank, having kept the agreement until Swindell & Company were barred from bringing a suit for damages, is now estopped from suing on the notes. This oral agreement is also relied upon as "a covenant never to sue, which is equivalent to a release." We think this agreement, alleged to have been made by Swindell, acting for his firm, with the president of the bank, was invalid for several reasons. The agreement is alleged to have been made by the president of the bank, and the plea does not allege that this officer had any authority from the

24

directors of the bank to make an agreement or contract releasing the defendants from the payment of their notes for the loans made to them by the bank. The directors of the corporation, and not the president, have the powers of the corporation, and the president has no implied authority, as such, to act as the agent of the corporation and release its debtors from the payment of their debts to it. 2 Morawetz on Private Corporations, §537; Cook on Stock and Stockholders, §716. The Supreme Court of the United States, in the case of Bank *v.* Dunn, 31 U. S. 51, holds that an agreement by the president and the cashier of a bank, that the indorser of a note shall not be liable upon it to the bank, does not bind the bank. The president of the bank has no authority to promise that the maker of paper which he discounts as such president need not pay it, or that the bank will not enforce it. First National Bank *v.* Tisdale, 18 Hun, 151. The president of a bank has no authority ex virtute officii to compromise claims due the bank. 5 Cyc. §§467, 470. The president of a bank can not consent to an arrangement by which the security due the bank will be impaired, nor make promises which will relieve the maker of a note payable to the bank from responsibility. 10 Cyc. §§907, 911. In *Home Insurance Co.* v. *Chattahoochee Lumber Co.,* 126 *Ga.* 328, it was held that no officer of the corporation had implied authority to waive the right of the company to indemnity which had already accrued; and in *Merchants Bank* v. *Rawls,* 7 *Ga.* 196, the court said that the president of the bank, without authority from the directors, had no authority to sell judgments which were the property of the bank; and in *Minnesota Lumber Co.* v. *Hobbs,* 122 *Ga.* 24, it was held that as a general rule the president has no inherent power to contract for the corporation. We think these authorities fully establish the proposition that the averments of the plea in this case were wholly insufficient to show that the president of the bank was authorized to make an agreement which would release the defendants from the payment of their promissory notes held by the bank for loans and advances made to them by it. The agreement made by the president, not to sue the defendants on their notes executed to the bank, being unauthorized, could not, of course, operate to relieve them from their written obligations.

6. But it is insisted that the bank ratified the agreement not to sue, because it did not bring suit for over four years after the notes had matured and until the defendants were barred of their right of action for damages. There is no allegation of any fact showing that the bank or its directors ever had knowledge of the alleged agreement made by the president, and certainly a mere failure for several years to sue would not be sufficient to imply such knowledge or to show ratification of an unauthorized act of its official. Before a corporation should be held as having ratified a verbal agreement of its agent to release the makers from the payment of notes amounting to $10,000, both knowledge and specific acts of ratification ought to be alleged and proved. The contention in the plea, that the bank had gotten the full benefit of the agreement not to sue, while Swindell & Company had lost their right of action, on account of the statute of limitations, is not well founded. The defendants could recoup all damages in this action. Civil Code, §3756. As long as the plaintiff has a legal right to sue on the notes, the defendants would have a correlative right to defend; and the plaintiff could not insist upon the statute of limitations in order to avoid the defendants' defense, while seeking to enforce the contract against him. *Morrow* v. *Hanson,* 9 *Ga.* 398.

7. The plea also alleged that the defendants had paid back to the bank $8,000 of the money loaned to them by it. A special demurrer called for the date of the payment. This information was important on the point as to whether any sum had been repaid subsequently to the alleged agreement never to sue, claimed to be equivalent to a release from the payment of the notes. No amendment was made to cure this defect, and the plea was properly stricken.

For the reasons stated, we are clear that the judgment sustaining the demurrers and striking the pleas, and rendering judgment for the full amount of the notes, principal, interest, and attorneys' fees, was right.

POWELL, J., though not disqualified, does not participate in this decision, having been of counsel in the case of *Swindell* v. *Bank,* 121 *Ga.* 714, wherein the issues and the parties were in most respects similar.                            *Judgment affirmed.*