28532. GEORGIA INVESTMENT COMPANY v. NORMAN.


ARGUED JANUARY 15, 1974 — DECIDED FEBRUARY 25, 1974 — REHEARING DENIED MARCH 8, 1974.

*Smith & Smith, Douglas E. Smith, Hansell, Post, Brandon & Dorsey, W. Rhett Tanner,* for appellant.

*Palmour & Palmour, James E. Palmour, III,* for appellee.

*Michael H. Terry, Robert N. Dokson, David A. Webster, Steven Gottlieb, Richard K. Greenstein, H. Winthrop Pettigrew, Charles M. Baird, John L. Cromartie,* amicus curiae.

NICHOLS, Justice. Appellant loan company concedes that the Industrial Loan Act, supra, is to be strictly construed and that if such Act is violated by the making of a loan in violation of such chapter, such loan contract is null and void. See Code Ann. § 25-9903.

The trial court, in passing upon the plaintiff's motion for summary judgment, prepared an extensive opinion dealing with each contention made by the plaintiff. The material parts of such opinion are as follows: "In what constitutes a reversal of the usual situation, the Borrower (Plaintiff) in this case brings his suit against the Loan Company (Defendant) seeking to have the loan contract between the Borrower and the Loan Company declared void, a security deed canceled and money refunded, contending

that the contract and acts of the Loan Company pursuant thereto were in violation of provisions of the 'Industrial Loan Act' of Georgia and therefore null and void. The contract here involved is the last of 16 similar contracts between the Borrower and the Loan Company over a period of 9 years, beginning with an original loan of $198.00 and culminating in the final note between the parties in the amount of $2,640.00 which included a 'renewal loan' in the amount of $2,275.87. The Loan Company by its 'cross-action' seeks to recover $2,015.50, the amount it claims Borrower still owes under the contract.

"The plaintiff filed his motion for summary judgment. If any one of the following three questions can be answered in the affirmative then there would remain no genuine issue as to any material fact and the motion must be granted: . . . [Two questions were answered in the negative and there was no appeal from that part of the judgment] . . .

"3. Did the Loan Company 'charge, contract for, or receive' the notary fee collected from the Borrower in violation of the provisions of the Industrial Loan Act?

"Able counsel on both sides have done extensive research discovery and preparation, and have vigorously and thoroughly presented their authorities, theories and arguments both orally and by written briefs. We have considered carefully all their authorities, arguments, the interrogatories, answers thereto and admissible parts of the affidavits. We are persuaded that . . . the third question must be answered in the affirmative, thereby entitling the Borrower to Summary Judgment . . .

"*Did the Notary Fee constitute an unauthorized charge?* Interrogatory No. 21 of Plaintiff's First Interrogatories to Defendant was as follows: 'State whether or not a notary public fee was charged by Defendant to Plaintiff and if so, state: (a) The name of the person who witnessed the loan made by Plaintiff with Defendant dated February 28, 1970 or any previous loan; (b) The amount of the notary fee charged; (c) To whom the notary fee was paid, when, and by what method, i. e. check, cash, etc. ; (d) Whether or not a notary fee was charged on any other evidence of indebtedness by Plaintiff to Defendant and if so, all details surrounding the charge and collection of said notary fee.'

"The Defendant answered as follows: 'yes. (a) Gene Pethel (b) $1.00, (c) Gene Pethel by check. (d) Yes. The notary fee was charged on the loan made the Plaintiff on June 16, 1969.'

"However, in Paragraph 10 of the affidavit filed by Pete Pethel

as President of the Loan Company he states, 'The notation "Notary Fee—$1.00" which is shown on the face of the contract of February 28, 1970, in the column "Disbursements to Others" records a disbursement made to pay the charge of a third-party notary public, one Gene Pethel, who witnessed Plaintiff's signature pursuant to Regulation 120-1-10-1.03 (4) of the Georgia Industrial Loan Commissioner. Said notary fee was not charged by the defendant, Georgia Investment Company, d/b/a Dixie Loan Company and, of course, therefore, was never earned by said Georgia Investment Company.'

"There is some ambiguity or contradiction between the answer to the interrogatory and the affidavit; and it must be construed against the Loan Company and in favor of the Plaintiff. However, the contradiction is not actually substantial. Gene Pethel was an employee of the Loan Company and had been since September, 1947, at the time of the transaction here involved. While the Loan Company states that Gene Pethel's regular compensation was not affected by receipt . . . of notary fees, in our view the Loan Company received benefit from the collection of notary fees at least indirectly, in that the job held by Gene Pethel would be more attractive and easier to fill with a qualified person by reason of the additional compensation or supplement to [the] regular salary in the form of notary fees. The wording of Legislative Act is explicit: 'No licensee shall charge, contract for, *or* [emphasis ours] receive any other or further amount in connection with any loans . . . in addition to those hereinbefore provided . . . *Georgia Code Ann. Sec. 25-316.'*

"Notary fees are not authorized.

"*Georgia Code Ann. Sec. 25-9903* provides in part, '. . . Any loan contract made in violation of (this) chapter shall be null and void.' This law, being in derogation of the common law, must be strictly construed. *Denson v. Peoples Bank,* 186 Ga. 619.

"The fact that the Industrial Loan Commissioner may require contracts to be notarized is immaterial; he does not and could not, contrary to the Statute, require the Loan Company to collect a notary fee.

"Although the Loan Company here did not retain, it did 'charge'; it did 'receive' the notary fee and then disbursed it by check to its employee. This was not authorized by the Industrial Loan Act. To approve this charge would open the door to other charges not authorized by the Act and imposed by Loan Companies for the purpose of being passed on to third parties.

"Counsel for the Loan Company strenuously argue that because of the minimal size of the notary fee here involved, the doctrine of de minimis non curat lex should be applied. They cite in support of their position the case of *Dean et al. vs. Avco Financial Services, Inc.*, 128 Ga. App. 256. We do not believe this case is applicable to the instant case. In the *Dean* case the Court of Appeals applied the doctrine where there was an alleged insufficient disclosure as to the insurance coverage provided by a renewal contract, which referred, for description to a previous contract. And even in the *Dean* case, the Court of Appeals stated they 'might well reach a different conclusion' if repossession or seizure of the property had been involved. In the instant case a different and more serious defect is alleged, charging a violation of the law prohibiting usury; the instant case is distinguishable from the *Dean* case.

"Urging upon us the decision in Orme v. Lendahand, 128 F2d 756 (C.A.D.C. 1942), (which is not binding on this court), counsel for the Loan Company argue that to enforce in this case the Georgia Law declaring contracts in violation of provisions of the Industrial Loan Act null and void would be 'confiscatory' and would approach 'confiscation of property.' But the decision relied upon itself recognizes that this penalty imposed by the Legislature, is '. . . apparently valid as a preventive against usurious interest.'

"In essence, the Defendant in seeking the application of the doctrine de minimis non curat lex and in urging the 'confiscation of property' argument, is asking the court to weigh the equities between the Borrower and the Loan Company. In the first place, we do not believe we have that discretion in this matter — whatever the motivation of the Loan Company or the Borrower, it is our view that we must strictly construe the Industrial Loan Act, and if there was a violation, whatever the amount of money involved, the Statute declares the contract null and void. If injustice results, it results from defective legislation, and the injured party's remedy lies with the Legislature, not with the Courts. However, we question that strict application of the Industrial Loan Act in this case would amount to confiscation of property. A summary of the nine (9) year relationship between these two parties fails to sustain counsel's argument in this respect. . . The Industrial Loan Act provides exceptions to the law against usury, and thus authorized the transactions reflected by the foregoing summary so that they did not constitute usurious acts. But the same Act also provides that, 'No licensee shall charge, contract for, or receive any other or further amount. . .' and any contract made in violation of (this)

chapter shall be null and void.' We do not believe the doctrine (or the balancing of equities) of de minimis non curat lex is applicable here.

"*Relief Granted:* Accordingly, the court having found the principal contract null and void by reason of the unauthorized collection of the notary fee, it is hereby adjudged and decreed that the contract appearing as Exhibit B to Plaintiff's petition and being a loan contract between Nathaniel Norman and Annie Mae Norman on the one hand and Dixie Loan Company on the other hand is hereby declared null and void and canceled between the parties; further, inasmuch as the operation of the Deed to Secure Debt appearing as Exhibit A as attached to plaintiff's petition, is dependent upon the loan contract, said Deed to Secure Debt between Nathaniel Norman and Annie Mae Norman as Grantors and Dixie Loan Company as Grantee, and recorded in the Deed Records of Hall County in Book 266 pp. 333-34, is hereby adjudged and decreed null and void and ordered canceled on the record.

"The plaintiff further prays judgment returning to the Plaintiff all monies paid by the Plaintiff to the Defendant under the aforesaid contract. No genuine issue as to any material fact remains concerning the payment by the Plaintiff of the sum of $624.50 under the aforesaid contract; it is undisputed also that the Plaintiff received cash from the Defendant in the amount of $107.18 and is therefore entitled to recover the difference; and it is adjudged and decreed that the plaintiff do have and recover of the defendant the sum of $517.32 with costs of suit in the amount of $266.50."

This opinion of the trial court well states the law and properly construes the evidence in this case and is adopted by this court.

The only facet of the case not dealt with in this opinion is the contention of the lender that it should be entitled to recover from the plaintiff borrower for money had and received. In support of the contention the decision of the Court of Appeals in *Abrams v. Commercial Credit Plan,* 128 Ga. App. 520 (197 SE2d 384), is cited. The Court of Appeals did not hold in that case that "an action for money had and received" would lie, but did state, after holding that the plaintiff lender was not entitled to recover on the note, that such an action may lie. In the case sub judice like the *Abrams* case the loan company has attempted to recover only on the contract. For the first time, in its enumerations of error, it seeks to raise the question of its right to recover "for money had received." Such question was not before the trial court, and is not before this court

on appeal.

*Judgment affirmed. All the Justices concur, except Gunter and Ingram, JJ., who concur in the judgment only, and Jordan, J., who dissents.*

INGRAM, Justice, concurring. I concur in the judgment reached by the majority opinion because I believe the lender can recover (in an appropriate assumpsit claim) the principal sum of cash loaned to the borrower. There is no doubt that this lender made a usurious loan and must forfeit all interest and charges on the loan contract under the statute because the loan contract is "null and void." But the statute does not say the loan itself is void and that the borrower is therefore entitled to the windfall of retaining without repayment the actual monies loaned to him. See Ga. L. 1955, pp. 431, 445 (Act No. 219).

The cases relied on by the appellee are cases decided under the old Small Loan Act and were required by the literal terms of the statute existing at that time. This older statute, the predecessor to our present Industrial Loan Act, provided that: "If interest or charges in excess of those permitted by this Act shall be charged, contracted for or received, the contract of loan shall be null and void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever." Ga. L. 1920, pp. 215, 219. See also Ga. L. 1935, pp. 394, 395, for an amendment containing the same language. Under the plain provisions of these laws, the right of the lender to recover the principal amount of the loan was expressly taken away, and the earlier appellate decisions applying the statute were correct.

In 1955, the General Assembly adopted the Industrial Loan Act and specifically repealed the provisions of the earlier Small Loan Act, as amended. See Ga. L. 1955, pp. 431, 445. The penalties section of the Industrial Loan Act provides that, "Any loan contract made in violation of this Act shall be null and void." (Sec. 20). The language of the predecessor statute authorizing a forfeiture of the principal amount of the loan, if the loan were made in violation of the statute, was omitted from the new statute. As seen, the present statute provides only that the loan contract shall be null and void. It is the loan contract which creates the obligation on the borrower to pay interest and other charges. Thus, if the loan contract requires the borrower to pay interest or other charges which are illegal, the contract, by the terms of the statute is "null and void." Hence the lender in such circumstances forfeits all interest and charges created by the contract because, being null and void, it is unenforceable.

This leaves an implied obligation on the borrower to repay the actual money loaned to him. If the General Assembly had intended to require a lender to forfeit the principal sum loaned, it would have included the language from the old Small Loan Act in the New Industrial Loan Act. Since the General Assembly intentionally omitted this language from the present Act, I fail to see how the courts can do other than apply the statute as written. Certainly, we have no authority to add the needed language by judicial decree. The present statute leaves no "gap" for judicial discretion and I feel duty bound to apply the statute as the General Assembly wrote it. See *Abrams v. Commercial Credit Plan,* 128 Ga. App. 520, supra, noted in the majority opinion.

I am authorized to state that Justice Gunter concurs in this concurrence.

JORDAN, Justice, dissenting. I agree with that part of the majority opinion which adopts as correct the finding of the trial court that the loan contract here involved was null and void. Code Ann. § 25-9903 clearly provides that any loan contract made in violation of the provisions of the Industrial Loan Act shall be null and void. No clearer mandate or statement could have been made by the General Assembly.

It has always been recognized that since the Industrial Loan Act allows charges far in excess of that allowed under general statutes that the Act will be strictly construed and all penalties strictly enforced. Such a desirable legislative policy would be completely eviscerated if a lender, after imposing a null and void contract upon the borrower, were to be allowed to recover the principal amount of the loan under the theory of money had and received or under any other theory.

I therefore respectfully dissent from that part of the majority opinion which would allow any recovery whatsoever by the lender after entering into such a void contract. The holding made here today contravenes clear legislative intent as set forth above.