## 49527. HODGES et al. v. COMMUNITY LOAN & INVESTMENT CORPORATION OF NORTH GEORGIA.

CLARK, Judge.

Of the issues raised by this appeal, two are of first impression in this state. One involves the Georgia Industrial Loan Act of 1955 codified in the Annotated Code as Chapter 25-3. The other deals with the Federal Truth-In-Lending Act, 15 USCA § 1601 et seq. and the regulation adopted pursuant thereto published at 12 CFR 226, commonly known as Regulation Z.

The first problem has most recently been explored by Justice Conley Ingram via his concurring opinion in *Ga. Invest. Co. v. Norman,* 231 Ga. 821 (204 SE2d 740). We pose this question thusly: Can an Industrial Loan Act lender recover from a borrower balance of principal owing from a loan pursuant to a theory of assumpsit, or money had and received, when the loan contract between the lender and borrower is null and void because its terms violate the provisions of the Industrial Loan Act?

The second question concerns the one year statute of limitations embodied in the Federal Truth-In-Lending Act. As to this issue we inquire: Can a borrower maintain a counterclaim against a lender for violations of the Truth-In-Lending Act when the counterclaim is initiated more than one year from the date of the violation of the Act?

In the complaint for money had and received filed September 20, 1973, the pleader recites: "On June 15, 1972, plaintiff loaned to defendants the sum of $1,164.41 cash and thereafter defendants paid to plaintiff a total of $480.67 leaving a principal balance due of $683.74 on which interest has accrued in the sum of $54.01 at the rate of 7% per annum." The answer filed by the borrowers-defendants denied liability on the ground that the action was predicated upon a contract which was null and void because its provisions violated the Industrial Loan Act. Borrowers also pleaded a counterclaim which alleged the lender failed to meet the requirements imposed by the Federal Truth-In-Lending Act. 15 USCA

§ 1601 et seq., and its implementing regulation, 12 CFR 226 et seq., known as "Regulation Z."

After discovery, both parties moved for summary judgment which motions were resolved in favor of the plaintiff-lender from which rulings borrowers bring this appeal.

1. "An action for money had and received is founded upon the equitable principle that no one ought unjustly to enrich himself at the expense of another, and is maintainable in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it, and ex aequo et bono it belongs to another. *Merchants Bank of Macon v. Rawls,* 7 Ga. 191 (50 AD 394); *Alexander v. Coyne,* 143 Ga. 696 (85 SE 831, LRA 1916D 1039). Thus an action for money had and received is a substitute for a suit in equity (*Culbreath v. Culbreath,* 7 Ga. 64 (50 AD 375)), and, while founded on causes of action arising out of application of equitable principles, is an action at law by reason of its origin as a mode of action in the common-law courts. *Culbreath v. Culbreath,* supra." *Jasper School District v. Gormley,* 184 Ga. 756, 758 (193 SE 248). Can such an action be maintained in the case at bar?

In *Abrams v. Commercial Credit Plan,* 128 Ga. App. 520 (197 SE2d 384) this court ruled that a licensed lender could not recover upon a loan contract which was made for a period in excess of twenty-four months and was, therefore, null and void under the provisions of the Industrial Loan Act. But in so ruling, this court added: "What we hold here is that the *contract* is void under the language of the statute, to wit, Code Ann. § 25-9903. As to whether the *indebtedness* is extinguished is another matter, and we do not reach that question, as the above statute simply provides that the 'loan contract' is null and void. However, there is law to the effect that an action in assumpsit, or as is commonly termed, 'an action for money had and received' may be available to recover money to which one party is entitled, and which the opposing party, in equity and good conscience, is not entitled to retain." Id. at 522. Thus, in ruling upon the issues presented in the *Abrams* case, we theorized that an Industrial Loan Act lender may recover from the

borrower for money had and received regardless of the loan contract being a nullity.

Our theory was recently discussed by the Supreme Court in *Ga. Invest. Co. v. Norman*, 231 Ga. 821, supra. There the court ruled that an unauthorized charge to the borrower of a notary public fee violated the Industrial Loan Act but en banc the court declined to pass upon our present problem because the question had not been posed in the trial court. In concurring as to the nullification of the loan contract Justice Ingram with Justice Gunter agreeing and Justice Jordan dissenting on this single point concluded "[T]he statute does not say the loan itself is void and that the borrower is therefore entitled to the windfall of retaining without repayment the actual amounts loaned to him." (P. 827). In reaching the conclusion that the lender is entitled to recover in an appropriate assumpsit action the amount of cash actually advanced to borrower, the erudite Justice reviewed the history of our small loan laws and applied legal principles of statutory interpretation.

As we deem the concurring opinion determinative of our question we quote it *in extenso:* "[T]he predecessor to our present Industrial Loan Act, provided that: 'If interest or charges in excess of those permitted by this Act shall be charged, contracted for or received, the contract of loan shall be null and void and the licensee shall have no right to collect or receive any principal, interest or charges whatsoever.' Ga. L. 1920, pp. 215, 219. See also Ga. L. 1935, pp. 394, 395, for an amendment containing the same language. Under the plain provisions of these laws, the right of the lender to recover the principal amount of the loan was expressly taken away, and the earlier appellate decisions applying the statute were correct.

"In 1955, the General Assembly adopted the Industrial Loan Act, as amended. See Ga. L. 1955, pp. 431, 445. The penalties section of the Industrial Loan Act provides that, 'Any loan contract made in violation of this Act shall be null and void.' (Sec. 20). The language of the predecessor statute authorizing a forfeiture of the principal amount of the loan, if the loan were made in violation of the statute, was omitted from the new

statute. As seen, the present statute provides only that the loan contract shall be null and void. It is the loan contract which creates the obligation on the borrower to pay interest and other charges. Thus, if the loan contract requires the borrower to pay interest or other charges which are illegal, the contract, by the terms of the statute is 'null and void.' Hence the lender in such circumstances forfeits all interest and charges created by the contract because, being null and void, it is unenforceable.

"This leaves an implied obligation on the borrower to repay the actual money loaned to him. If the General Assembly had intended to require a lender to forfeit the principal sum loaned, it would have included the language from the old Small Loan Act in the New Industrial Loan Act. Since the General Assembly intentionally omitted this language from the present Act, I fail to see how the courts can do other than apply the statute as written." Id. p. 827.

In summary we answer our first inquiry in the affirmative because the legislature did not make the transaction illegal nor did it say "the licensee shall have no right to collect or receive any principal, interest or charges whatsoever" but expressly limited its declaration of nullification to the "loan contract."

Moreover, we are constrained to recognize the principle that statutes are to be construed against forfeitures. This was well expressed by the courageous Justice Blandford[1] in the historic case of *Renfroe v. Colquitt,* 74 Ga. 618. Following the acquittal of Renfroe in the impeachment proceedings[2] brought against him

---

[1] Mark H. Blandford (1826-1902) served with distinction both in the Mexican War and War Between the States, losing his right arm in battle in Virginia. From 1868 until his death he practiced in Columbus except for the period from 1883 to 1891 that he was on the Supreme Court. His memorial appears at 120 Ga. 1085.

[2] Georgia has had only two impeachment trials of public officials, both occurring at the 1879 Adjourned Session. The other impeachment resulted in a finding of

for his conduct as State Treasurer (see Georgia State Jour. 1879 Adj. Sess., page 799 et seq.). Governor Colquitt sued him and his sureties upon his bond. In ruling for Renfroe, the Supreme Court at p. 624 said: "Forfeitures are not favored in the law; courts always incline against them. 15 Wallace 156. Where a statute may be construed so as to give a penalty, and also so as to withhold the penalty, it will be given that construction which will prevent the penalty." In citing *Renfroe v. Colquitt,* supra, in a recent case, *Sale v. Leachman,* 218 Ga. 834, 837 (131 SE2d 185), our Supreme Court pointed out that "Our laws abhor penalties and forfeiture . . . and a law imposing a penalty must be strictly construed." The Georgia Industrial Loan Act contains nothing which impels the holding that a licensee is to forfeit the actual principal sums which it advances to the borrower. It is only the "loan contract" which the statute declares a nullity.

Cases wherein a plaintiff is not permitted to recover upon an implied promise due to the illegal nature of the express contracts are not apposite to the case at bar. The illegalities generally contemplated in such cases are those of a quasi-criminal nature or of the *pari delicto* type where both parties should suffer forfeitures because of the sinister connotations of such transactions. Such situation does not exist where the nature of the transaction was legal but the contract was nullified by judicial interpretation of a statute. Courts should be slow to declare business dealings void against public policy. *Mutual Life Ins. Co. v. Durden,* 9 Ga. App. 797 (3) (72 SE 295). "The power of the courts to declare a contract void for being in contravention of a sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." *Equitable Loan Co. v. Waring,* 117 Ga. 599 (1) (44 SE 320). Illustrative of cases in which public policy stricture has been invoked are *Sapp v. Davids,* 176 Ga. 265 (168 SE 62) (champerty) and *Standard Club v. Saphire,* 97 Ga. App. 135 (102 SE2d 72) (sale of gambling devices). See also Code Ann. § 20-504.

---

guilty and removal from office of Comptroller-General Washington L. Goldsmith.

There is nothing sinister nor evil in the contract sub judice which was entered into by both lender and borrower under the authority of the Georgia Industrial Loan Act. Although the contract is rendered void when it fails to meet the specifications of its enabling legislation, the transaction made between the parties in the belief that they are in compliance with the statute should not ipso facto be ruled violative of public policy.

Case law of other jurisdictions does not help appellant's cause. Those jurisdictions which prohibit the lender from seeking to be placed in the status quo generally rely upon statutes which expressly prohibit the lender from recovering any principal or interest whatsoever. See Smashed Ice v. Lee, 86 S. D. 658 (200 NW2d 236); Dougherty v. Commonwealth Co., 172 Neb. 330 (109 NW2d 409); Home Finance Co. v. Padgett, 54 S2d 813 (La. App. 1951).

2. Can the borrowers maintain their counterclaim for violation of the Federal Truth-In-Lending Act? They are confronted with the statutory bar that "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 USCA § 1640 (e). From what date is the time to be computed? Wachtel v. West, 344 FSupp. 680 (E. D. Tenn. 1972) held that "the Act itself appears to contemplate that 'a violation' occurs at the moment a loan transaction is consummated. . ." This ruling that the limitations statute is to be computed from the date of the transaction was affirmed in Wachtel v. West, 476 F2d 1062 (6th Cir. 1973) cert. den. 414 U. S. 874.

Recognizing their problem, appellants' attorneys concede their clients were unaware of the possible existence of a Regulation Z violation until they consulted counsel and thus could not have availed themselves of their counterclaim until they were sued at which time the one-year period had already expired. Therefore, they assert the limitations statute is not applicable to counterclaims such as that in the case at bar. In support of their assertion they rely principally upon United States v. Western Pac. R. Co., 352 U. S. 59 (77 SC 161, 1 LE2d 126) and Wood Acceptance Co. v. King, 18 Ill. App.

3d 149 (309 NE2d 403). We find neither case to be apposite.

In the United States Supreme Court case, the suit sought recovery of amounts representing the difference between sums paid as freight rates and those allegedly due; thus, the defense, namely the unreasonableness of the rates, was wholly intertwined with the main action. In ruling that the defense could be presented despite a statute of limitation bar, the court noted that "it would be incongruous to hold that once a lawsuit is properly before the court, decision must be made without consideration of all the issues in the case and without the benefit of all the applicable law." United States v. Western Pac. R. Co., supra, p. 72. The incongruity referred to in Western Pacific does not exist in this case. The Truth-In-Lending claim is not an integral part of the action for money had and received; it is merely ancillary to that action. Unlike the issues presented by the Western Pacific action, all of the issues of the assumpsit claim sub judice can be considered by the court without a consideration of borrowers' Truth-In-Lending counterclaim.

Although the issue presented for decision in the Illinois case is similar to that presented here, the contrary conclusion reached therein was based upon the Illinois extension of limitations statute which reads: " 'A defendant may plead a set-off or counter-claim barred by the statute of limitation, while held and owned by him, to any action, the cause of which was owned by the plaintiff or person under whom he claims, before such set-off or counter-claim was so barred and not otherwise . . .' " Wood Acceptance Co. v. King, supra, p. 150.

Our Georgia statute (Code Ann. § 3-810; Ga. L. 1964, p. 165; 1967, pp. 226, 243) which extends the limitation period for counterclaims and cross claims is not so broad. It merely states: "The limitations of time within which various actions may be commenced and pursued within this State to enforce the rights of the parties are extended, only insofar as the enforcement of rights which may be instituted by way of a counterclaim and cross-claim, so as to allow parties, up to and including the last day upon which the answer or other defensive

pleadings should have been filed, to commence the prosecution and enforcement of rights by way of counterclaim and cross-claim *provided that the final date allowed by such limitations for the commencement of such actions shall not have expired prior to filing of the main action."* (Emphasis supplied.) Since the lender's action was initiated after the expiration of the Truth-In-Lending limitation period, the borrowers' counterclaim cannot be considered timely.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

Submitted July 1, 1974 — Decided October 23, 1974 — Rehearing denied November 18, 1974.

*Antonio L. Thomas, Thulani Gcabashe,* for appellants.

*Schwall & Heuett, Lee S. Alexander,* for appellee.

On Motion for Rehearing.

On motion for rehearing, borrowers raise the contention their counterclaim is in the nature of recoupment, and that therefore the Truth-In-Lending statute of limitation should not be a bar thereto. Upon careful consideration of this contention we find it to be without merit.

It is true that a statute of limitation is not a bar to a recoupment defense. As was said in *Swindell v. Bainbridge State Bank,* 3 Ga. App. 364, 371 (60 SE 13), "As long as the plaintiff has a legal right to sue on the notes, the defendants would have a correlative right to defend; and the plaintiff could not insist upon the statute of limitations in order to avoid the defendants' defense, while seeking to enforce the contract against him. *Morrow v. Hanson,* 9 Ga. 398."

The rationale for the non-applicability of a statute of limitation to a defense in the nature of recoupment is that the defense arises out of the very contract which the plaintiff wishes to enforce. See *Lufburrow v. Henderson,* 30 Ga. 482. But the defense must arise via an obligation or covenant of the contract itself: "A defendant's right to recoupment is confined to the

contract on which the plaintiff sues . . . for the reason that the plaintiff has not complied with a cross-obligation or an independent covenant of the same contract." *Atlantic C. L. R. Co. v. Snodgrass,* 14 Ga. App. 668 (1) (82 SE 153). Thus, "Where the plaintiff sues on one part of a contract consisting of mutual stipulations made at the same time and relating to the same subject-matter, the defendant may recoup his damages arising from the breach of that part which is in his favor. [Cits.]" *Byrom v. Ringe,* 83 Ga. App. 234, 241 (63 SE2d 235).

The Truth-In-Lending counterclaim sub judice did not arise out of the mutual obligations or covenants of the loan transaction upon which this suit was founded but is independent thereof. Although the claim arose contemporaneously with the execution of the contract, it is not a product of a breach of any obligation or covenant therein; nor is it related either to the subject matter of the contract or the plaintiff's suit. On the contrary, the borrowers' claim for recovery of a penalty created by federal law is an extrinsic by-product of this transaction and is not dependent upon the lender's contractual obligations. It has no relationship to an infringement of the mutual obligations and stipulations of the transaction. In short, it is not a defense which goes to the justice of the lender's claim but an affirmative action which demands a penalty for an independent wrong. Accordingly, borrowers' counterclaim is in the nature of set-off, not recoupment. See Code §§ 20-1301, 20-1312; *Sammons v. Read,* 31 Ga. App. 763 (121 SE 855). As such it is subject to the statute of limitation stated in the federal statute creating the penalty. Code § 3-708; *Byrom v. Ringe,* supra.

*Motion for rehearing denied.*