429 So.2d 1041 (1982)
Ex parte Willie D. FLETCHER.
(Re Willie D. FLETCHER
v.
PUBLIC FINANCE COMPANY OF ALABAMA).
81-435.
Supreme Court of Alabama.
October 29, 1982.
Rehearing Denied February 11, 1983.
*1042 Thomas G. Keith of Legal Services of North-Central Alabama, Huntsville, for petitioner.
Currun C. Humphrey of Humphrey & Smith, Huntsville, for respondent.
Robert J. Varley, David S. Yen and J. Allen Sydnor, Jr. of Legal Services Corp. of Ala., Montgomery, amicus curiae.
FAULKNER, Justice.
On May 3, 1973, Willie D. Fletcher borrowed $1,458.87 from Public Finance Company with interest at 19.71%, payable in 36 monthly installments of $54.00. The first payment was due on June 3. The finance charge computed by Public Finance was $485.13. A portion of the note contained this language:
"DESCRIPTION AND IDENTIFICATION OF SECURITY INTEREST: This loan and any extension or renewal thereof or future advance is secured by a security agreement dated 5-3-73 on the following described property: Consumer Goods including but not limited to household goods, furniture, appliances and personal property, of all kinds, additions, replacements and accessories thereto which are hereafter acquired by borrowers."
Fletcher made intermittent payments on the loan from June 3, 1973 to June 30, 1974. As a matter of fact, only $300.00 was repaid by him, and some of those payments were late, and for an amount less than $54.00.
On October 29, 1974, Public Finance, under the optional acceleration clause of the note, declared the entire unpaid amount due, and brought suit against Fletcher for $1,657.50. Public Finance alleged in its complaint that the default occurred on July 31, 1974, Public Finance's default judgment, taken on December 17, 1974, was set aside on April 15, 1976, because of insufficient service of process.
After proper service, Fletcher filed an answer of general denial, and later amended specifically to deny the default occurred on July 31, 1974. Next, he filed a counterclaim against Public Finance, alleging that it violated the Truth-In-Lending Act, 15 U.S.C. 1640. Public Finance moved to dismiss the counterclaim on the ground that the one-year statute of limitations under the Truth-In-Lending Act (TILA), 15 U.S.C. 1640(e) had expired.[1]
The district court entered judgment for Public Finance for $2,249.22 and denied the counterclaim. Fletcher appealed, asking for a de novo trial in the circuit court.
Public Finance filed an answer to Fletcher's counterclaim, admitting the allegations contained in it, but asserted the statute of limitations as a defense. The circuit court found that Public Finance had, indeed, violated the TILA, but denied recovery on the ground that the statute of limitations had expired. Fletcher appealed that judgment to the Court of Civil Appeals, 429 So.2d 1039.
On appeal to the Court of Civil Appeals, Fletcher contended that Public Finance's cause of action for his default arose prior to June 3, 1974. Thus, he argued, his counterclaim for violating the TILA related back to the first instance of default, under Rule 13(c), ARCP, and § 6-8-84, Code 1975. The Court disagreed with him by holding that his cause of action derived from 15 U.S.C. 1640(e) expired one year after the execution of the noteMay 3, 1974; that his cause of action did not accrue until Public Finance accelerated the note, and that was more than one year after the execution of the note, and therefore, his counterclaim did not relate back.
We disagree with the decision of the Court of Civil Appeals and reverse.
This is the typical case for a money lender to assert the statute of limitations in a Truth-In-Lending Act violation. The lender and the borrower enter into a loan transaction. *1043 Proper TILA disclosures are not made. Being unknowledgeable of TILA and Regulation Z, the borrower does nothing about his potential claim. He defaults. The lender, being aware of the limitations provision of TILA, waits until more than a year after the execution of the note, and then files suit to collect the entire amount due on the note. It is at this point that the borrower seeks legal advice. A counterclaim is then filed in the original suit. The lender yells "GOTCHAthe statute of limitations under TILA has expired. The statute began to run when the note was executed."
The issue to be decided in this case has been before the Court of Civil Appeals in Darrow v. Beneficial Finance Company, 370 So.2d 1001 (Ala.Civ.App.), cert. denied Ex parte Darrow, 370 So.2d 1005 (Ala.1979). The Court stated:
"The defendant contends that the trial court improperly dismissed his counterclaim against the plaintiff as time barred. The defendant argues this is so because a TILA counterclaim is in the nature of a recoupment rather than a setoff and thus is not subject to the statute of limitations which applies to setoffs under Code of Ala.1975, § 6-8-84.
"This court is not unfamiliar with the issue. In Hewlett v. John Blue Employees Federal Credit Union, Ala.Civ.App., 344 So.2d 505 (1976), cert. denied, Ex parte Hewlett, Ala., 344 So.2d 509 (1977), we held that counterclaims based on disclosure violations of the Federal TILA are in the nature of setoffs and not recoupments. Therefore, the `relation back' doctrine of ARCP 13(c) will not save defendant's counterclaim from the applicable statute of limitations unless it is a legally subsisting claim at the time the plaintiff's cause of action arises. Hewlett at 507; Code of Ala.1975, § 6-8-84. The statute of limitations applicable to the instant case is one year from the date of the violation, 15 U.S.C. § 1640(e), which is held to occur, if at all, when the loan contract is consummated. Wachtel v. West, 476 F.2d 1062 (6th Cir.), cert. denied, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973)."
In Hewlett v. John Blue Employees Federal Credit Union, 344 So.2d 505 (Ala.Civ. App.1976), the Court of Civil Appeals explained the difference between setoff and recoupment by relying on a Georgia Court of Appeals case, Hodges v. Community Loan & Investment Corp., 133 Ga.App. 336, 210 S.E.2d 826 (1974), which held:
"The Truth-In-Lending counterclaim sub judice did not arise out of the mutual obligations or covenants of the loan transaction upon which this suit was founded but is independent thereof. Although the claim arose contemporaneously with the execution of the contract, it is not a product of a breach of any obligation or covenant therein; nor is it related either to the subject matter of the contract or the plaintiff's suit. On the contrary, the borrower's claim for recovery of a penalty created by federal law is an extrinsic by-product of this transaction and is not dependent upon the lender's contractual obligations. It has no relationship to an infringement of the mutual obligations and stipulations of the transaction. In short, it is not a defense which goes to the justice of the lender's claim but an affirmative action which demands a penalty for an independent wrong. Accordingly, borrowers' counterclaim is in the nature of set-off, not recoupment."
This Court denied certiorari in Hewlett, as shown by the Darrow quote hereinabove.
In retrospect, it appears that too much emphasis has been given § 6-8-84, Code 1975, and its "legal subsisting claim" provision, and not enough emphasis on Rule 13(a) and (c), ARCP. The Committee Comments to Rule 13 state:
"Some claims which may be asserted as counterclaims under Rule 13 could heretofore have been interposed by way of recoupment or setoff at law, or by cross-bill in equity. But the counterclaim procedure here provided is so much more extensive than those former Alabama practices, that it is not worthwhile to list the respects in which this rule changes existing *1044 law. In general, the scheme of the rule is that any claim whatever which any party has against any opposing party may be asserted as a counterclaim. Rule 13(a), (b). It is immaterial whether the counterclaim is legal or equitable or in contract or in tort, or even whether it has any connection whatever with the plaintiff's claim. 6 Wright & Miller, Federal Practice and Procedure, § 1410 (1971). The counterclaim may ask for more or different relief than that sought by the opposing party, it need not run for all the parties on one side and against all the parties on the other, and it need not tend to diminish or defeat the recovery sought by the opposing party. Rule 13(c). Additional parties may be brought in to defend against the counterclaim where their presence is necessary for the granting of complete relief. Rule 13(h); 6 Wright & Miller, Federal Practice and Procedure, § 1434 (1971).
"Though any claim against an opposing party may be presented as a counterclaim, the rule also provides that such a claim must be pleaded as a counterclaim if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. Rule 13(a). The purpose of this provision is to avoid circuity of actions, and to require assertion as counterclaims of those claims which are likely to turn on the same facts as the original claim. A counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim."
In Hewlett, the Court of Civil Appeals held that disclosure violations of the TILA are in the nature of setoffsnot recoupments. This holding was grounded on the theory that the TILA violation is independent of the lender's contractual obligation. Thus, that court held, the TILA disclosure and the contract are separate transactions, and there can be no "relation back" for statute of limitations purposes.
While this Court denied certiorari in Hewlett and Darrow without opinion, it has since recognized that a Truth-In-Lending counterclaim is in fact in the nature of a recoupmenti.e., a compulsory counterclaim. Brooks v. Peoples National Bank of Huntsville, 414 So.2d 917 (Ala.1982). Brooks, following the Committee Comments to Rule 13, held that a counterclaim is compulsory if there is a logical relation of any sort between the original claim and the counterclaim. There is, certainly, a logical relation between the TILA disclosure and the terms of a promissory note, because (1) the note is the common basis for both claims, and (2) the credit terms and the disclosure requirements of the TILA are integral parts of the contract.
Finally, it is fundamentally unfair to permit a money lender to take advantage of a law that permits him to wait out the limitations period of a penalty statute, and escape its sanctions when he files suit to collect the debt. The penalty provisions of the TILA are not there to reward debtors. On the other hand, they are intended to deter creditors from shady practices.
We hold that in a collection suit a counterclaim filed for violation of TILA disclosure provisions is compulsory and is in the nature of recoupment, and under Rule 13(c) it relates back to the time the original plaintiff's claim arose.
Darrow v. Beneficial Finance Company and Hewlett v. John Blue Employees Credit Union, supra, are hereby specifically overruled.
REVERSED AND REMANDED.
JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially, with whom BEATTY, J., concurs.
TORBERT, Chief Justice (concurring specially).
I agree that the case is due to be reversed and remanded. I would, however, reach this result in a different manner.
The Court of Civil Appeals has consistently treated a Truth-in-Lending claim as a set-off. See, Hewlett v. John Blue Employees Federal Credit Union, 344 So.2d 505 *1045 (Ala.Civ.App.1976); Hagler v. Ford Motor Credit Co., 367 So.2d 468 (Ala.Civ.App. 1978); Darrow v. Beneficial Finance Co., 370 So.2d 1001 (Ala.Civ.App.1979). The approach taken by the majority would require an overruling of all three of these cases. The majority opinion states that this Court "has since recognized that a Truth-in-Lending counterclaim is in the nature of a recoupmenti.e., a compulsory counterclaim," citing Brooks v. Peoples National Bank of Huntsville, 414 So.2d 917 (Ala. 1982).
In fact, Brooks did not deal with a Truthin-Lending claim at all. Rather, it was an action for fraud in the inducement of the execution of a note and mortgage, and a counterclaim for default on the note. The statement made in Brooks concerning Truth-in-Lending counterclaims was purely dictum and does not control the case before us.
In 1980 Congress passed the Truth-in-Lending Simplification and Reform Act. This Act indicated that these claims might be considered as matters either of recoupment or of set-off and that this determination should be controlled by state law:
"This subsection does not bar a person from asserting a violation of this title in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by state law."
Pub.L. No. 96-221, § 615(a)(4)(e) (March 31, 1980). In Alabama, we have treated these counterclaims as set-offs, and I see no reason for changing that approach. The rationale for this approach was clearly presented in Hewlett by the Court of Civil Appeals in the section quoted in the majority opinion.
I would hold that Fletcher's counterclaim is in the nature of a set-off or permissive counterclaim that may be brought within one year of the date of the Truth-in-Lending violation. Under Rule 13(c) of the Alabama Rules of Civil Procedure, that counterclaim would relate back to the time the plaintiff's original claim arose.
The Court of Civil Appeals in Fletcher's case treated the claim as relating back to the date of acceleration, and thus considered it barred by the statute of limitations. I would hold that his claim relates back to the date of the initial default, at least as to the past due payments, thus allowing Fletcher to pursue his claim.
The Alabama Code provides, "All civil actions must be commenced after the cause of action has accrued within the period prescribed in this article and not afterwards, unless otherwise specifically provided for in this Code." Ala.Code § 6-2-30 (1975). This court has stated, "The accrual of a cause of action occurs as soon as the party aggrieved is entitled to begin a prosecution thereon." Turner v. County Board of Education of Dale County, 360 So.2d 948, 950 (Ala.1978). See also, Hunnicutt v. City of Tuscaloosa, 337 So.2d 346 (Ala.1976). The plaintiff, then, is entitled to bring a claim when the defendant has breached the terms of the underlying contract. In the case before us, Willie Fletcher, the defendant, agreed to make 36 monthly payments. During the first year, only intermittent payments were received by the lender. Thus, during the first year the defendant was in default as to several of the installment payments due during that time. It follows then, that the plaintiff's cause of action accrued as to each of these installments when the defendant failed to make the payment on time.
The respondent successfully argued to the Court of Civil Appeals that the optional acceleration clause affected the running of the statute of limitations on the past due installments. I would reverse this holding. The general rule as to the relationship between an optional acceleration clause and the statute of limitations is stated as follows:
"The American cases are agreed that, when the acceleration provision is optional with the holder of the note, the Statute of Limitations does not run until the note is due according to its terms, in the absence of an exercise of the option to *1046 declare it due upon the default; in other words, the default does not ipso facto start the running of the statute."
Annot., 34 A.L.R. 897 (1925).
While I recognize that this is the rule as to the amount accelerated, in my opinion, this does not affect the running of the statute of limitations on the past due installments.
"It is generally agreed that when the acceleration provision is optional with the holder of the note, the statute of limitations does not run until the note is due according to its terms, in the absence of an exercise of the option to declare it due upon the default; in other words, the default does not ipso facto start the running of the statute as to the entire debt but only as to the installment or interest which is in default."

12 Am.Jur.2d, Bills & Notes, § 1047 (emphasis added). This issue was confronted by this Court in Maynor v. Dillin, 241 Ala. 362, 364, 2 So.2d 440, 442 (1941).
"Since the option to accelerate payment was never exercised, the statute of limitations did not begin to run at the date of the note, nor at any later date, other than default on payment of installments. The statute began to run as to each installment, a distinct cause of action, at the date of maturity thereof."
This approach was made explicit in American Mutual Building & Loan Co. v. Kesler, 64 Idaho 799, 137 P.2d 960 (1943). In that case the defendant failed to make installment payments and the mortgagee foreclosed under an optional acceleration provision. The court stated:
"The bar of the statute of limitations then began to run against the unmatured installments and continued to run against past due installments...."

137 P.2d at 963.
As stated in respondent's brief, there is no evidence of any waiver of default on the past due installments. Further, the claim presented by Public Finance is for the entire unpaid balance and for the past due installments. Thus, I would hold that plaintiff's cause of action accrued, as to the past due installments, when Fletcher first failed to make a scheduled payment. Thus, the defendant's counterclaim relates back to the first default, which occurred during the one-year period immediately following the initiation of the credit agreement, and is therefore not barred by the statute of limitations. Therefore, I would hold that Fletcher is entitled to bring his Truth-in-Lending counterclaim, and, would reverse and remand this case to the Court of Civil Appeals.
BEATTY, J., concurs.
NOTES
[1] "Any action under this section may be brought ... within one year from the date of occurrence of the violation."