46830. MARTIN v. GLENN'S FURNITURE
COMPANY, INC.

ARGUED JANUARY 10, 1972—DECIDED JUNE 19, 1972—
REHEARING DENIED JULY 19, 1972—

694

*Kenneth G. Levin,* for appellant.

*Claude E. Hambrick,* for appellee.

QUILLIAN, Judge. ■ Objection was made to the admission of a business record of the plaintiff showing amounts owed and paid by the defendant. The ledger in question contained as its first entry and dated July 30, 1970, a balance of $329.40, less a credit of $42, leaving a balance of $287.40. This was the amount owed under the first contract sued on which was executed on July 2, 1970. The defendant contends that as a matter of law the distance of time between July 2, 1970, and July 30, 1970, is insufficient to comply with *Code Ann.* § 38-711 (Ga. L. 1952, p. 177). This Code section requires a showing that it was in "the regular course of business to make a memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter." It is urged that 28 days was not a reasonable time.

The reason for this requirement is so the entry might appear to have taken place while the memory of the fact was recent, or the source from which the knowledge of it is derived was unimpaired. 17 ALR2d Anno. 235, 257. Redlich v. Bauerlee, 98 Ill. 134 (38 AR 87). The instant situation does not involve a transfer made from memory after a long lapse of time. First of all, this was the initial entry made on the ledger. Furthermore; the entry was based on a written contract which itself, was introduced into evidence and contained all the information transcribed. Thus, the fact that the information was not placed on the ledger until 28 days after the contract was signed would not render such document inadmissible. See in this connection 30 AmJur2d 59, Evidence, § 938; 32 CJS 927, Evidence, § 690.

■ ■ It is urged that the trial judge erred in not finding for the defendant on her counterclaims and in entering judgment for the plaintiff in the amount sought. Since these issues are interrelated, we consider them together.

The Georgia Retail Instalment and Home Solicitation Sales Act provides: "'Retail Instalment contract' or 'contract' means an instrument or instruments creating a purchase money security interest. It does not include a revolving account or an instrument reflecting a sale pursuant thereto." *Code Ann.* § 96-902 (7) (Ga. L. 1967, pp. 659, 660; 1968, p. 1088). A revolving account is defined as an instrument or instruments prescribing the terms of retail instalment transactions which may be made thereafter. from time to time pursuant thereto. *Code Ann.* § 96-902 (8). In short, a revolving account is based on a series of transactions which may occur in the future. The Federal Truth in Lending Act also contemplates two different types of accounts. The key term under the Federal Act is "Open End Account" which means: "Consumer credit extended on an account pursuant to a plan under which (1) the creditor may permit the customer to make purchases or obtain loans, from time to time, directly from the creditor or indirectly by use of a credit card, check, or other device, as the plan may provide; (2) the customer has the privilege of paying the balance in full or in instalments; and (3) a finance charge may be computed by the creditor from time to time on an outstanding unpaid balance. The term does not include negotiated advances under an open end real estate mortgage or a letter of credit." Regulation Z, 12 CFR § 226.2 (r). Other credit arrangements are covered under "Credit Other Than Open End."

A sound explanation of the distinction between "open end" and other credit is contained in the interpretation of 15 USCA § 1602 found in 12 CFR § 226.203 (b, c) (34 FR 8698, June 3, 1969). "In certain cases, a form of contract or note relating to a single transaction provides that the finance charge will be computed from time to time by application of a rate to the unpaid balance and stipulates

required minimum periodic payments. However, the obligor has the privilege of making larger and more frequent payments than stipulated or paying the obligation in full at any time without penalty. The question arises as to whether the creditor should make disclosures in such circumstances under § 226.7 for open end credit accounts or under § 226.8 for credit other than open end. Although the terms of such a contract or note meet the second and third requirements for such a plan, they do not meet the first of such requirements nor the basic qualification that consumer credit be extended on an account pursuant to a plan. [See Regulation Z, § 226:2 (r) quoted above.] Therefore, disclosures in this case are required to be made under § 226.8."

In this case, plaintiff's suit was brought on two contracts, not on an account. The contracts in question created a security interest, leaving title in the seller until the purchase money is paid. The contracts used the terminology inherent in an instalment contract and used the notice required under *Code Ann.* § 96-903 (Ga. L. 1967, pp. 659, 663; 1970, p. 98) for retail instalment contracts. Furthermore, the contracts in question make no mention of any arrangement for future transactions. Therefore, it is clear that under the Federal law these contracts are "contracts other than open end," and under the State law they are retail instalment contracts.

However, these contracts provide for a finance charge which is appropriate to a revolving account; that is, they allow an annual percentage rate of 18% computed on the unpaid balance. See *Code Ann.* § 96-904 (Ga. L. 1967, pp. 659, 667; 1970, pp. 98, 100). This is a clear violation of the Georgia law which states that a retail instalment contract may charge a time price differential which shall not exceed: "On the unpaid balance, 12 cents per $1 per year on so much of the unpaid balance as does not exceed $400; and 10 cents per $1 per year on so much of the unpaid balance as exceeds $400." *Code Ann.* § 96-903 (d). Under *Code Ann.* § 96-910 (Ga. L. 1967, pp. 659, 672), a violation of *Code Ann.* § 96-903 (d) shall bar recovery of any finance charge,

delinquency or collection charge on the contract. See *Reese v. Termplan, Inc., Bolton,* 125 Ga. App. 473 (188 SE2d 177). Under testimony given by plaintiff, there were $79.78 in finance charges imposed under the contract. Because of the violation of *Code. Ann.* § 96-903 (d), recovery of these charges was barred and the trial judge erred in allowing recovery of this amount in the final judgment.

■ We also find merit in the defendant's counterclaim based on violations of the Federal Truth in Lending Act and Regulation Z. A contract other than open end requires certain disclosures and certain terminology to be utilized in making such disclosures. The contract in question violated several of the provisions of 12 CFR § 226.8 (b) and (c) by failing to use the terminology required. For example, we point out a few of these discrepancies: The contract fails to use the term "Total of Payments" as required by 12 CFR § 226.8 (b) (3); the contract also fails to use the terms "Cash Price" required by (c) (1); "Unpaid Balance of Cash Price" required by (c) (3); and "Amount Financed" required by (c) (7). 15 USCA § 1640 imposes civil liability on a creditor who fails to disclose any information required under this Chapter and allows an amount equal to the sum of twice the amount of the finance charge but not less than $100 or more than $1,000. An action to recover under this section may be brought in a U. S. District Court or any other court of competent jurisdiction within one year of date of the violation. 15 USCA § 1640 (e). A creditor may escape liability if within 15 days of discovering an error and prior to the institution of the action under this section he notifies the person of the error and makes necessary adjustments. 15 USCA § 1640 (b). This was not done in this case. 15 USCA § 1640 (c) provides: "A creditor may not be held liable in any action brought under this section for a violation of this chapter if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." This section places the burden on the creditor and in effect

means that when a violation is shown the debtor has a prima facie right to recover. Here violations were shown and the creditor made no effort to show that the violations were not intentional. Hence, the plaintiff was entitled to recover the $100 sought under each contract.

■ With regard to the counterclaims seeking recovery under the Georgia law, we find them to be without merit. *Code Ann.* § 96-910 (c) states: "In case of a wilful violation of any provision of this Chapter, with respect to any transaction, the retail buyer in such transaction may recover from the person committing such violation (or may set off or counterclaim in any action by such person) a minimum of $100 . . ." As can be seen the Georgia law is not worded like the Federal law and requires that there be a wilful violation. " 'The general rule is that mere violation of instructions, orders, rules, ordinances, and statutes, and the doing of hazardous acts where the danger is obvious, do not, without more, as a matter of law, constitute wilful misconduct; and where the misconduct consists of a failure or refusal to perform a duty required by statute, a bare failure, or refusal, without more, does not constitute a wilful failure or refusal to perform such duty. Such violations or failures or refusals generally constitute mere negligence, and such negligence, however great, does not constitute wilful misconduct or wilful failure or refusal to perform a duty required by statute . . ." *Gooseby v. Pinson Tire Co.*, 65 Ga. App. 837 (2) (16 SE2d 767). See *Carroll v. Aetna Life Ins. Co.*, 39 Ga. App. 78, 80 (146 SE 788); *King v. State*, 103 Ga. 263, 265 (30 SE 30); *Hateley v. State*, 118 Ga. 79, 81 (44 SE 852). By using the terminology contained in the Act the legislature obviously intended that there be some showing that the violation be "wilful" other than the mere fact of the violation itself. The evidence in this case was insufficient to demand a finding of wilfulness, therefore the trial judge was authorized to deny recovery as to that portion of the defendant's counterclaim.

The judgment is affirmed on the condition that the amount of $79.78 included as finance charges and the

amount of $200 which should have been imposed as a civil penalty for the plaintiff's violation of the Truth in Lending Act be written off within 15 days after the remittitur is made the judgment of the trial court; otherwise reversed.

*Judgment affirmed on condition. Hall, P. J., and Pannell, J., concur.*