## 50762. BROWN v. JENKINS.

STOLZ, Judge.

On October 16, 1972, Johnny Lee Brown purchased bedroom and living room furniture from the Badcock Furniture and Appliances Co. pursuant to a "Purchase Plan Credit Agreement." Mr. Brown purchased additional items of furniture on November 6, 1972. Both purchases were made pursuant to an open-end account, known as a revolving account under the Georgia Retail Installment and Home Solicitation Sales Act, Code Ann. Ch. 96-9 (Ga. L. 1967, pp. 659 et seq.) (Hereinafter Installment Sales Act).

On January 13, 1975, Badcock Furniture notified defendant, Mr. Brown, that he was in default on his account and that it was accelerating payment on the note, thereby declaring the entire balance due at that time. On February 4, 1975, Badcock Furniture filed for a writ of possession, which was granted by the State Court of Dougherty County. The thrust of this appeal is that the writ of possession was improperly issued since it must be based upon a valid security interest and, by the terms of the Installment Sales Act, no security interest can be created in a credit transaction pursuant to a revolving account. *Held:*

Unless specifically restricted, a security interest may be created by the contractual agreement of two parties to secure the payment of an obligation by creating rights in one party as to certain designated collateral. The Uniform Commercial Code, as enacted in 1962, applies to transactions intended to create a security interest in personal property in this state. Code Ann. § 109A-9—102

(1) (Ga. L. 1962, pp. 156, 381). The Code provisions are supplemented by more specific regulatory statutes which are controlling in case of conflict. Code Ann. §§ 109A-9—201, 109A-9—203 (2) (Ga. L. 1962, pp. 156, 390-391; as amended). Otherwise, the agreement is effective according to its terms.

No real conflict arises in the case sub judice insofar as the Uniform Commercial Code governs the creation and incidents of security interests whereas the Installment Sales Act prescribes the mechanics of financing consumer transactions. Under the latter statute, parties may contract to create a security interest which will then be governed by provisions of the Uniform Commercial Code unless those provisions conflict with the specific terms in the Installment Sales Act. The statutes neither overlap nor contradict each other when applied to the question in the instant case. We are not concerned with whether certain terms of the security interest are valid, but with whether a security interest may properly be created under a revolving sales account.

Consumer credit as we know it today had its origin in the sale of hard goods by local retailers. Whereas in previous times, a buyer would have gone to a financial institution for a loan with which to buy goods, by the 1920's retail sellers started extending credit to their customers, thereby enabling the latter to deal directly with their local merchants in the purchase of high-priced durable commodities. This allowed necessitous wage earners who could not qualify for commercial loans to make major purchases otherwise out of their immediate financial reach.

By extending credit which allowed the buyer to obtain immediate possession of the goods without first paying for them, the seller had, in effect, loaned money to the buyer in much the same fashion as a financial institution would have made a loan. In return for the credit he extended, the seller added a finance charge, a "time-price differential," to his cash price. In addition, the seller usually retained a security interest in the goods sold until the buyer had completed his payments for them.

However, mass sales of softwares and consumables necessitated certain changes in the mechanics of credit

sales. "Modern retailing practices have made it necessary for sellers to abandon this type of calculation in a large percentage of cases . . . Clerical costs and convenience make it impractical to assign a time-price to each item bought and to enter into a separate contract providing for the payment in installments of each time-price. It is more efficient and convenient simply to add the cash price of each purchase to a customer's account and to apply some periodic credit charge to the total." R. L. Jordan and W. D. Warren, Uniform Consumer Credit Code, 68 Colum. L. Rev. 387, 403. Thus, the revolving account emerged as a method of combining volume merchandising with credit sales.

Sellers generally take a security interest in all large, durable items, since those items can be expected to return a substantial portion of their original purchase price at a sheriff's sale if the consumer defaults. On the other hand, consumables and other non-durable items have a very low resale value and, consequently, a seller may be less concerned with taking a security interest in them, particularly since their value may be minimal when compared to the cost of perfecting a security interest. However, this does not mean that a seller cannot or should not be allowed to retain a security interest in any item that he sells when both buyer and seller agree to create such an interest.

Moreover, we read no such restriction into the Installment Sales Act. As defined in Code Ann. § 96-902 (8) (Ga. L. 1967, pp. 659, 660; 1968, p. 1088), a revolving account is an instrument contemplating a series of transactions under which the buyer pays instalments with a time-price differential computed on the unpaid balance of his account at the time of each instalment. A retail instalment contract contemplates a single closed transaction wherein the time-price differential is computed and added on to the amount of the cash sale price to be financed. The major difference between the two types of accounts is in the method of calculating the credit charge. Whereas in a revolving account the finance charge is computed from time to time on the basis of the debtor's unpaid balance, in a retail instalment sale, the credit charge is calculated in advance and added on to the

cash sale price.

In this context, it is clear that the definition of a retail instalment contract as ". . . an instrument or instruments creating a purchase money security interest," does not preclude the existence of a security interest on a revolving account. Rather, the definition means that whenever a single consumer transaction is financed in instalments, the seller is given a purchase money security interest to protect his rights in the collateral until such time as the buyer pays for it. In contrast, we read the language defining a revolving account to mean that the parties may contract to include a security interest in the goods sold, but that this is totally within their discretion.

The appellant has focused upon the language in the definition of a retail instalment contract which specifically excludes a revolving account. As we understand the definition, this express exclusion exists in order to maintain the statutory scheme of different interest rate computations for the two transactions. However, we note that the different interest rates are not determinative of the rights which should be afforded the creditors in each type transaction. The interest rate on an open-ended revolving account is 18% per year. On a retail instalment contract, this rate is 12% simple for the first $400 and 10% simple on the balance in excess of $400. Code Ann. § 96-904 (b) (Ga. L. 1967, pp. 659, 667; 1970, pp. 98, 100); Code Ann. § 96-903 (d) (Ga. L. 1967, pp. 659, 663; 1970, p. 98). However, the retail instalment contract uses an add-on rate while the revolving account uses a rate computed upon a declining balance. For this reason, in real dollar-terms, the revolving account may at times involve a smaller finance charge. Since the cost in dollars of the credit extended under a revolving account will vary according to the amount of payments made by the buyer, we do not believe that the difference in interest rates allowed between a revolving account and a retail instalment contract is significant in determining the respective rights of both buyer and seller. While one rate may be higher than another, this does not necessarily reflect a higher finance charge in dollar-terms.

In short, we do not believe that the lack of parallelism

in the definitions of a retail instalment contract and a revolving account gives rise to any inferences concerning the rights of a merchant to extend credit to his customers. Nor has this court previously implied that the difference in language is significant. Appellant's reliance on *Martin v. Glenn's Furniture Co.*, 126 Ga. App. 692 (191 SE2d 567), is misplaced. Our decision in *Martin* was based upon the fact that the contract in that case clearly met each and every criterion for a retail instalment contract; we intended to make no statement nor to raise any inference as to the characteristics of a revolving account.

Both the Uniform Commercial Code and the Installment Sales Act uphold the freedom of parties to negotiate the terms upon which they deal with each other. This is not to say that some creditors will not attempt to foist oppressive credit terms, such as broad cross collateral agreements, upon their debtors. However, this case is not an appropriate one for considering those practices and we do not reach that issue. Under the issues raised in the instant case, we find no legislative or policy bases for restricting freedom to negotiate the terms of a contract. Accordingly, it was not improper for the trial court to issue a writ of possession based upon the security interest which Badcock Furniture Company held in the collateral.

*Judgment affirmed. Deen, P. J., concurs. Evans, J., concurs in the judgment.*

ARGUED MAY 21, 1975 — DECIDED SEPTEMBER 8, 1975.

*B. T. Edmonds, H. W. Pettigrew,* for appellant.
*Homer M. Scarborough, Jr., James R. Meyer,* for appellee.
*Smith, Cohen, Ringel, Kohler, Martin & Lowe, David K. Whatley, Theodore H. Milby,* amicus curiae.