### 50840. BELL v. LOOSIER OF ALBANY, INC.

CLARK, Judge.

Appellant seeks to have our court place transactions under the Retail Instalment and Home Solicitation Sales Act in the same *verboten* category as those appellate court rulings which have ruled that lenders who violate the Industrial Loan Act forfeit both finance charges and principal. This represents the main contention of appellant. Additionally, appellant attacks the right of plaintiff below to amend its complaint. The other item presented is appellant's contention that the trial court erred in ruling against defendant's counterclaim based on an alleged violation of Regulation Z of the Federal Truth-in-Lending Act.

Appellant-defendant ("buyer") made three separate purchases of single items of household goods (a stereo, rug, and refrigerator) from the furniture store operated by plaintiff-appellee ("instalment seller"). At the time of each purchase the customer executed separate retail instalment sales contracts upon forms prepared by the Georgia Retail Furniture Dealers Association. The respective contracts were dated October 26, 1973, December 8, 1973, and January 12, 1974. Each contract provided for twelve monthly instalment payments. In connection with the second (rug) and third (refrigerator) purchases and execution of the second and third contracts

the amount agreed to be paid represented the time purchase price after the seller had deducted the unearned finance charges which had been included in the previous instalment contracts. These deductions were computed under the "Rule of 78" known also as "the sum of digits" method. Such computed deductions are required by the Georgia Retail Instalment and Home Solicitation Sales Act (Code Ann. § 96-903 (c)). (We will hereafter refer to this statute as "Retail Instalment Sales Act" which can be found in Ga. L. 1967, p. 659 and Ga. L. 1970, p. 98. It appears in the Annotated Code as Chapter 96-9. All citations will be to sections of the Annotated Code.)

Each contract gave the instalment seller the right to accelerate the entire balance of the account upon default. This clause reads as follows: "(3) Time is the essence of this contract and conditions and each and every provision thereof, and upon default in any payment when due, the entire amount of purchaser's indebtedness is at vendor's option, become due and payable and collectable by any legal process — all special remedies herein being merely cumulative."

The buyer failed to make the agreed payments and after fruitless efforts to collect, the furniture store sued for $325.18. This amount was the total remaining due under the last contract which had included the balances due under the first two contracts after complying with the statutory mandate of deducting the balance of the unpaid finance charges in conformance with the "Rule of 78." The complaint alleged "There is a balance owing on these Contracts, due, demanded and unpaid in the amount of $325.18." Defendant answered and counterclaimed. She alleged that the amount demanded contained no pro rata rebate for unearned interest on the contract as it had not run for its full contractual period, and this type of acceleration violated Code Ann. Chapter 96-9. Her counterclaim asserted plaintiff's charging of excessive interest in violation of Code Ann. § 96-903 (d) should be deemed "wilful" and subject him to the penalties imposed by Code Ann. § 96-910. Defendant further alleged that plaintiff violated the Truth In Lending Act, 15 USCA § 1601 et seq., and Federal Reserve Regulation Z, 12 CFR § 226.1 et seq. by failing to properly disclose the nature of

the security interest retained by the creditor, and not providing a "description of the property brought forward from the previous contract as security."

Plaintiff then amended the complaint and sought recovery in the reduced amount of $303.68. Testimony at the trial developed this amount was reached after deducting the unearned finance charges under the "Rule of 78." In turn, defendant amended the answer by striking the original counterclaim and substituting another counterclaim. Herein the same contention is made as to the violation of § 226.8 (b) (5) of Regulation Z as to "clear identification of the property to which the security interest relates. . ." The amount sought in the counterclaim is $122.84 plus the costs of this action, and for such further relief as the trial court may deem proper.

The case was tried before a judge without a jury. He awarded judgment to the plaintiff in the amount of $303 as being the amount proved. He denied the two counterclaims based respectively upon the Retail Instalment Act and the Federal Consumer Credit Protection Act. *Held:*

1. Because the Retail Instalment and Home Solicitation Sales Act is a totally different breed of animal than the Georgia Industrial Loan Act we are unable to agree with the appellant's thesis that decisions rendered under the latter lending statute declaring loan contracts invalid apply to the Retail Instalment and Home Solicitation Sales Act.

It should be noted that the appellant's attack upon the purchase contracts is limited to the presence in the contract of paragraph numbered (3) whereby ". . . upon default in any payment when due the entire amount of purchaser's indebtedness is at vendor's option, become due and payable and collectable by any legal process." Appellant does not contend that the finance charges added to the unpaid balance of the cash price making up the total time payment exceeded the statutory maximum.

A comparison of the language of the two statutes and also of the contracts in the case sub judice with those documents which were ruled in violation of the Industrial Loan Act shows the verbiage of the statutes and contracts

to be totally different. The seminal case dealing with the subject was *Lewis v. Termplan, Inc., Bolton,* 124 Ga. App. 507 (184 SE2d 473). There this court condemned two phrases as making operative the "null and void" sentence of the loan regulatory statute. These two contractual phrases were "Failure to pay any installment... when due hereunder shall at the option of the holder and without notice render all installments due and payable at once" and "interest from maturity at the rate of 8% per annum." Because all industrial lenders used forms containing substantially the same language in these two clauses, the stare decisis decisions subsequently rendered by our appellate courts pointed to the illegality resulting from these inculpatory phrases.

The instant contract was drafted for use by the members of the Georgia Retail Furniture Dealers Association. (T. 22; 31). It does not contain any phrase violative of the Retail Instalment and Home Solicitation Act. Nor does it impose "interest from maturity." The pertinent paragraph here which has been attacked by appellant reads: "Time is the essence of this contract and conditions and each and every provision thereof, and upon default in any payment when due, the entire amount of purchaser's indebtedness is [sic] at vendor's option, become due and payable and collectible by any legal process — all special remedies herein being merely cumulative." (T. 52, 53, 54).

What is meant by the term "the entire amount of purchaser's indebtedness?" That is determined by the statute applicable to such retail instalments sales. "An intention contrary to the law should not be read into a contract by placing such a construction upon a provision therein, when the provision is just as susceptible of a construction that will show a lawful intention." *Southern Loan Co. v. McDaniel,* 50 Ga. App. 285, 286 (2) (177 SE 834) and cits. Code Ann. § 96-903 (d) specifies the permissible rates which "the seller under a retail installment contract may charge, receive and collect a time price differential." Sub-paragraph (i) of that same section makes mandatory a refund computed according to the "Rule of 78" to the buyer who exercises the right given in the same sub-paragraph to "prepay in full."

Accordingly the proper construction of this language is to read therein the statutory rates. The directive as to computation of refund is limited to those who "prepay in full."

We are here dealing with a time purchase situation. Accordingly, as was said in *General Finance Corp. v. Davis,* 126 Ga. App. 821, 824 (1a) (191 SE2d 865) "There was no loan of money." In *Richardson v. C. I. T. Corp.,* 60 Ga. App. 780, 791 (2) (5 SE2d 250) this court ruled that the sum added to the cash price was not "interest, but was a sum which the purchasers agreed should be added to a base price to establish a 'time price.' " This principle was reiterated in *Smith v. Singleton,* 124 Ga. App. 394 (184 SE2d 26) (decided after the passage of the Retail Instalment Act), where the court said (Headnote 5): "[I]t is settled law in this state that the usury statutes are inapplicable to a retail instalment contract as here shown, which included a stated 'Finance Charge' or 'Time Charge' or 'Time Price Diff.' added to the cash balance to arrive at a 'Time Balance' payable in monthly in-stalments." See also *Bowen v. Consolidated &c. Corp.,* 115 Ga. App. 874, 877 (156 SE2d 168). We must therefore consider the instant case within the boundaries of the Retail Instalment Act and not in the context of a loan of money.

As filed in the case at bar the furniture dealer's complaint sought recovery of the full contractual amount. The defendant did not defend on the basis of the original finance charges being in excess of the statutory ceiling. Instead defendant asserted that the presence of the acceleration clause made the contracts illegal. Plaintiff did not then undertake to insist upon a retail instalment seller to collect the contract amount, but instead amended to reduce the amount sought by making an allowance according to the "Rule of 78." He testified he used the chart prepared by the Georgia Retail Furniture Dealers Association for this purpose. (T. 31).

Defendant contends that such amendment should not be permitted as this would be approval of "a-hand-caught-in-the-cookie-jar" situation. (Brief, p. 6). We disagree. Plaintiff's witness testified the firm's practice was to compute the refund of unearned finance

charges before sending delinquent accounts[1] to its lawyer. "Down through the years the law of Georgia has evolved a broad and liberal policy of amendment of pleadings. . . This most liberal policy is apparently broadened even further by the wording of the CPA . . . Code § 81A-115 (a)." Ga. Prac. & Proc., § 7-2 (4th Ed.). Compare with *Atlanta Coca-Cola Bottling Co. v. Jones,* 135 Ga. App. 362, 367 (2) (218 SE2d 36) where this court ruled the trial court did not abuse its discretion in permitting plaintiff to amend the complaint on the day of the trial to increase the damages whereas here the amendment was filed well in advance of trial.

The differences in language, purpose and history of the 1967 legislation entitled "The Retail Instalment and Home Solicitation Sales Act" (contained in the Annotated Code as Chapter 96-9) from the "Georgia Industrial Loan Act" of 1955 (placed in the Annotated Code as Chapter 25-3) are such that our rulings in those G.I.L.A. cases do not apply.

Language: A comparison of the pertinent portions in each statute makes the distinction clear. *Lawrimore v. Sun Finance Co.,* 131 Ga. App. 96 (205 SE2d 110) followed the seminal case of *Lewis v. Termplan, Inc., Bolton,* supra. In each case this court based its holding on invalidity and uncollectibility of the loans upon two sections of the Industrial Loan Act. These were Section 16 (Code Ann. § 25-316) and the last sentence in Section 20 (Code Ann. § 25-320). The key words of the first section were "No licensee shall charge, *contract for,* or receive any other or further amount in connection with any loans authorized by this Chapter." (Emphasis supplied.) The sentence which provided the death penalty for such loans provided that "Any loan contract made in violation of this Act shall be null and void."

The Retail Instalment and Home Solicitation Act does not contain any similar nullification clause. Instead, it provides in Section 10 for a criminal penalty (Code Ann.

---

[1]Quaere as to the necessity of making such refund on delinquent accounts since the statute reads "any buyer may prepay in full at any time before maturity." (Code Ann. § 96-903 (i)).

§ 96-9906) and for two civil penalties (Code Ann. § 96-910 (b) and (c)). One of these penalties bars "recovery of any finance charge, delinquency or collection charge on the contract." But this is only when the seller charges or collects or receives a rate in excess of the statutory maximum. The other civil sanction authorizes recovery of "a minimum of $100 or double the time price differential and any delinquency charge and any attorneys' fees and court costs charged and paid with respect to such transaction." But this latter may be done only upon proof of "a wilful violation." (Our court is unanimous in the opinion that there was no wilful violation in the case at bar. We deal with this in the second division of this opinion.)

Additionally this penalty provision does not nullify the obligation but provides that despite the wilful violation, "the retail seller may recover from the retail buyer an amount equal to the cash price of . . . any insurance purchased by the retail seller for the retail buyer in connection therewith." (Code Ann. § 96-910 (c)). Contrast this with the Supreme Court's holding in *Hodges v. Community Loan &c. Corp.*, 234 Ga. 427 (216 SE2d 274) that the null-and-void clause of the Industrial Loan Act prevented the lender from recovering the principal advanced to the borrower as well as forfeiting the interest and other loan charges.

The provision in the Retail Instalment and Home Solicitation Sales Act paralleling Section 16 of the Industrial Loan Act reads: ". . . the seller . . . may charge, receive and collect a time price differential, which shall not exceed" stated rates. (Code Ann. § 96-903 (d)). The omission of the words "contract for" which were in the previous industrial loan statute is significant. The legislative intent is additionally emphasized by the absence of any "null and void" clause along with the requirement of a "wilful violation" for any penalty and even then giving such wilful violator the right to collect the "cash price" from the buyer.

Purpose: "The purpose of the [Industrial Loan] Act was to regulate the business of making loans of $2,500 or less, and to eliminate certain abuses in this field." *Robbins v. Welfare Finance Corp.*, 95 Ga. App. 90, 94 (96

SE2d 892, 895). To accomplish this, the statute provided for licensing such lenders and for supervision by the State Comptroller in accordance with the regulations issued by him as State Industrial Loan Commissioner. No such administrative set-up was provided for in the Retail Instalment and Home Solicitation Act. Instead the latter Act within its four corners spelled out in detail the manner in which retail instalment sales were to be conducted as well as door-to-door solicitation. There is nothing therein which can be construed as making a contract illegal when those details are not complied with because such was not the purpose of the legislation.

History: The Retail Instalment and Home Solicitation Act resulted from the current trend for "consumerism," whereby lawmakers enact protective measures which in effect have converted the caveat emptor doctrine to "Let the seller beware." The General Assembly passed both this statute and the Motor Vehicle Sales Finance Act in 1967 and in the following year Congress adopted the Consumer Credit Protection measures (15 USCA Chapter 41). The Georgia Industrial Loan Act resulted from the establishment of a resolution of the Legislature approved December 22, 1953, which appointed a citizen's commission with instructions "to investigate the small loan business and make recommendations to the next General Assembly looking to correction of any evils found to exist." Following the commission's study of the basic economic and social problems involved, the Industrial Loan Act was enacted for control of the small loan industry.

Our conclusion therefore is that we must reject the appellant's assertions that the decisions dealing with the Industrial Loan Act control the instant appeal.

In summary: the Retail Instalment and Home Solicitation Sales Act sets a ceiling on retail instalment finance charges; if there are overcharges in the computation at the time the contract is made, the seller is barred from "recovery of any finance charges, delinquency or collection charges"; if there is a wilful violation, then the buyer may recover from the seller specified statutory penalties. The statute permits the seller to recover the cash price and cost of insurance. It

does not declare transactions not in conformance to be "null and void."

2. Defendant contends that plaintiff was an experienced merchant, chargeable with knowledge of the law regarding instalment sales contracts, and that it has been over three years since *Lewis v. Termplan, Inc., Bolton,* 124 Ga. App. 507, supra, was issued — which first condemned contract acceleration clauses that permitted collection of unearned interest. They alleged that this case and the intervening period should have adequately advised merchants that contracting for, demanding, and suing for the total amount of remaining instalments due, would be a "wilful" violation of Code Ann. § 96-910 (c) which imposes penalties for such violations. We disagree. The general rule is that mere violation of instructions, orders, rules, ordinances and statutes, do not, without more, as a matter of law, constitute wilful misconduct. Such violations generally constitute mere negligence and do not constitute wilful misconduct or wilful failure to perform a duty required by statute. *Martin v. Glenn's Furn. Co.,* 126 Ga. App. 692 (191 SE2d 567); *Hateley v. State,* 118 Ga. 79, 81 (44 SE 852). Accordingly, the trial judge did not err in ruling against defendant's counterclaim for assessment of penalties under the Retail Instalment Sales Act.

3. Defendant's counterclaim contends that plaintiff's contracts do not comply with the Truth-In-Lending Act, 15 USCA § 1601 et seq. and Federal Reserve Regulation "Z," 12 C. F. R. § 226 et seq. Regulation Z refers to two types of credit accounts, "Open End" and "Credit Other Than Open End." This contract is obviously other than open end. Specific disclosures required to be made on "other than open end" accounts, include inter alia, all disclosures "shall be made together on either . . . (1) The same side of the page and above or adjacent to the place for the customer's signature; or (2) One side of a separate statement which identifies the transaction." Sec. 226.8 (a) Subsection (5), of Section 226.8 (b) requires "[a] description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to

which the security interest relates."

In this case each contract provided in the upper left-hand corner of the front side that "Seller retains title until purchase price is paid. Conditions on back bind both parties." In the lower left-hand corner of the front page a box contained the following: "Identification of Property covered by existing contract(s) to which seller retains title until this contract is paid in full . . . " On the reverse side of the page was another paragraph which provided: "(2) All property purchased from vendor, under this, previous, and *subsequent* contracts shall be kept at purchaser's address entered on this contract, shall not be sold, transferred, delivered or moved therefrom (except upon Vendor's written consent) and title thereto shall remain in vendor until the purchase price is fully paid." (Emphasis supplied.)

In the block for identification of property covered by existing contracts to which seller had retained title, the second and third contracts executed by defendant contained the notation "all prior this date." This is not "a clear identification of the property to which the security interest relates. . ." and does not comply with Sec. 226.8 (b) (5).

The security interest retained by the seller, as described by paragraph (2) on the reverse side of the contract is obviously much greater than that reserved on the front side of the contract and relates to property to be acquired — which is not covered by the two separate disclosures on the front side of the contract.

Section 226.8 (b) (5), provides in part: "If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired." Plaintiff's contract violated this provision by not clearly and fully describing the security interest retained by the seller in past, current, and future sales contracts, and placing such description with other disclosures — either on the front side with the other disclosures or on a separate page with all disclosures. Sec. 226.8 (a).

The Truth In Lending Act, 15 USCA 1601 et seq., and

Federal Reserve Regulation Z were intended to standardize terminology used in credit transactions, to require adequate disclosure to inform the debtor of the nature of the transaction, the cost of the transaction, and to list them in an order which would be meaningful to the debtor. The law requires that "[t]he disclosures required to be given . . . shall be made clearly, conspicuously, in meaningful sequence. . . ." Section 226.6 (a); Reg. Z, 34 F. R. 2002, Feb. 11, 1969, as amended. The second and third contracts fail to meet these objectives because of the faulty identification language reading "all prior to this date." See Johnson v. Johnson d/b/a Sharp Car (MD Ga.) Feb. 19, 1975; Evans v. Household Fin. Corp., 4 CCH Consumer Credit Guide, § 99-105 (DC Iowa 1973).

Accordingly, the trial court erred in ruling against the counterclaim based upon the Federal Consumer Protection Act.

*Judgment affirmed in part and reversed in part. Bell, C. J., Pannell, P. J., Deen, P. J., Webb and Marshall, JJ., concur. Quillian and Stolz, JJ., dissent. Evans, J., concurs in result of dissent.*

ARGUED JUNE 26, 1975 — DECIDED NOVEMBER 18, 1975 — REHEARING DENIED DECEMBER 12, 1975 —

*Sharon L. Tucker, Charles M. Baird, Myers & Parks, John R. Parks,* for appellant.

*Black & Black, Eugene Black, Jr., Crisp & Oxford, Henry L. Crisp, James C. Gatewood,* for appellee.

QUILLIAN, Judge, dissenting.

I dissent from Division 1 of the majority opinion. The acceleration clause in this contract is similar to those condemned in *Lawrimore v. Sun Fin. Co.,* 131 Ga. App. 96 (205 SE2d 110); affirmed *Sun Finance Co. v. Lawrimore,* 232 Ga. 637 (208 SE2d 454); *Hardy v. G. A. C. Fin. Corp.,* 131 Ga. App. 282 (205 SE2d 526); affirmed *G. A. C. Fin. Corp. v. Hardy,* 232 Ga. 632 (208 SE2d 453); *Frazier v. Courtesy Finance Co.,* 132 Ga. App. 365 (208 SE2d 175). Those actions were brought under the Industrial Loan Act, Code Ann. Ch. 25-3 (Ga. L. 1955, pp. 431 et seq.). This

action was brought under the Retail Instalment and Home Solicitation Sales Act (hereinafter referred to as Retail Instalment Act), Code Ann. Ch. 96-9 (Ga. L. 1967, pp. 659 et seq.). The Industrial Loan Act provides that the licensee shall not "[c]harge, contract for, receive and collect interest at a rate not to exceed" a stated amount. (Emphasis supplied.) The Retail Instalment Act's corollary provision states "the seller. . .may charge, receive and collect a time price differential, which shall not exceed" rates set forth in the statute. (Emphasis supplied.)

Both Acts prohibit charging an amount in excess of the stated maximum amount, but the Retail Instalment Act does not proscribe "contracting" for an amount in excess of the stated amount. I find the legislative intent clearly evidenced in its use of the terminology prohibiting the licensee or seller to "charge" any amount in excess of the rates set forth in the Acts. To state the same principle conversely, no one would contend that it was the intent of the legislature to permit licensees or sellers to charge customers in excess of those rates stated in the Acts.

The reason for my divergence from the majority opinion is that the clause used in this contract permits sellers to "charge" amounts in excess of those in the statute because it permits the maximum finance charge and then contracts for acceleration of payment of the "entire amount of the purchaser's indebtedness" remaining due in the event of default. The seller in this contract interpreted this clause to mean the remainder of the face amount of the note was due. I contend he was correct in his interpretation.

I do not believe my difference with the majority lies in legal semantics over the word "charge." Black's Law Dictionary defines "charge"as — "to claim, to demand; to accuse . . ." If a contract, as here, states that the purchaser owes the excess amount, and a collection agent of the seller attempts to collect the excess amount, and the seller's attorney sues the purchaser for the excess amount — I contend that the seller has charged that purchaser the excess amount. If these acts do not amount to charging that excess amount, what act does it take to "charge" an excess amount? The Retail Instalment Act prohibits

charging the excess amount, thus we had a violation of the Act.

In the instant case plaintiff's employees invoked the acceleration clause and demanded of defendant — thus charging her, the total amount remaining due on the face of the note which included unearned interest as the contract had not run its full contractual period. Plaintiff's complaint — when first filed, alleged that the *"balance owing* on these contracts, *due, demanded* and unpaid" was an amount which included unearned interest. (Emphasis supplied.) Defendant's answer pointed out the amount charged and demanded contained no pro rata rebate for unearned interest. Plaintiff amended and charged the lesser amount. The majority opinion finds no fault with this procedure. Herein lies our difference. The majority opinion provides legal sanction for a contractual procedure which permits sellers to charge, demand payment of, and sue for an amount which is in excess of that permitted by statute. If at any point the seller is caught charging the excess amount, he may reduce it to the legal maximum and continue to press his claim. Even if suit is filed for this usurious amount, the majority opinion holds that if the defendant's answer brings this to the court's attention, the plaintiff may amend and erase the violation of the statute as if defendant had never been charged the excessive amount.

It is all too easy to fall back upon the hoary legalism of "caveat emptor." But, is any purchaser sufficiently aware that improper acceleration of unearned interest is impermissible. Here the purchaser's lawyer invoked the purchaser's right to have the penalty provision applied to the seller who charged the excess amount. Apparently, invoking the purchaser's right in court results only in amendment of the pleading.

The majority relies upon *Lewis v. Termplan, Inc., Bolton,* 124 Ga. App. 507, supra, and *Lawrimore v. Sun Finance Co.,* 131 Ga. App. 96, supra. I find the wording of *Lewis* and *Lawrimore* to support my position. In *Lewis* the court specifically held that *"the election to exercise such a provision* as a means of collecting unearned interest plus other interest thereon constitutes usury . . ." 124 Ga. App. p. 507. (Emphasis supplied.) In *Lawrimore* the court held

that *"when the plaintiff opted to* accelerate and *claim unearned interest* on the otherwise unmatured instalments...this amount was usurious..." 131 Ga. App. p. 96. (Emphasis supplied.) The majority opinion did not discuss the decision of this court in *Reese v. Termplan, Inc., Bolton,* 125 Ga. App. 473 (188 SE2d 177) which held that when the maximum finance charge is charged and the seller uses an acceleration clause under the Retail Instalment Act, "[t]o accelerate the entire unpaid balance as due long before the time provided in the contract obviously discloses a claim exceeding the maximum finance charge . . ." 125 Ga. App. p. 475. I find *Reese* correctly states the law.

I would hold that the seller violated the provisions of Code Ann. § 96-903 (d) and invoke the penalties of Code Ann. § 96-910 (b).

I am authorized to state that Judge Stolz concurs in this dissent.