**Horace FORD**

v.

**TERMPLAN, INC. OF GEORGIA.**

**Civ. A. No. C78–1907.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 23, 1981.

Ralph Goldberg, Bowen, Derrickson, Goldberg & West, Atlanta, Ga., for plaintiff.

Richard V. Karlberg, Jr., Atlanta, Ga., for defendant.

Charles M. Baird, Atlanta, Ga., for amicus Georgia Legal Services Program, Inc.

Richard Cheatham, Hilary P. Jordan, Kilpatrick & Cody, Atlanta, Ga., for amicus Bank South Corp.

W. Rhett Tanner, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for amicus Georgia Consumer Finance Ass'n.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the Court on Defendant's Motion for Reconsideration of the

Court's Order of June 23, 1981, Plaintiff's Motion to Alter or Amend, and Plaintiff's Motion to Allege New Violation. The Court considers each motion in turn.

### I. *Motion to Reconsider*

■ The Defendant requests that the Court reconsider its June 23, 1981 ruling that Defendant's use of the Rule of 78's in computing the interest it refunded to Plaintiff when it refinanced a loan agreement governed by the Georgia Industrial Loan Act, Ga.Code Ann. §§ 25–301 to –324, violated that Act. The "Rule of 78's" or "sum of the digits" method, provides for a refund of the original interest charged based on the sum of the digits of each successive installment remaining, as compared with the sum of the digits of the original number of installments; digits are assigned to each successive installment in declining order. *See* Moore, *The Computation of Finance Charges in Georgia Consumer Credit Contracts*, 30 Mercer L.Rev. 281, 287–8 (1978). This contrasts with the *pro rata* method, which refunds interest according to the number of installments remaining, compared to the total number of original installments.

Defendant also correctly contends, as Plaintiff concedes, *see* Response to Defendant's Brief on the Counterclaim, that the Court erred in basing the penalty required by Ga.Code Ann. § 25–9903(b) on the finance charge rather than on interest and loan fees. As will be explained in the discussion below, however, Section 25–9903(b) does not apply in this case.

Among its arguments in support of its Motion, Defendant contends that *Customers Loan Corp. v. Jones*, 100 Ga.App. 653, 659, 112 S.E.2d 362, 364 (1959) (concurring opinion) (dicta), *overruled on other grounds, Chemetron Corp. v. Southern Nitrogen Co.*, 102 Ga.App. 577, 117 S.E.2d 180 (1960), Georgia cases construing the Georgia Retail Installment and Home Solicitation Sales Act, Ga.Code Ann. §§ 96–901 to –914, and the interpretation and practices of the Georgia Industrial Loan Act Commission require a different result. The Georgia

Consumer Finance Corporation, as Amicus Curiae, argues in support of Defendant's Motion that for over 25 years, since the passage of the Georgia Industrial Loan Act, the consistent administrative interpretation of the Act has been that it permits refunds of interest via the Rule of 78's on renewals or refinancings of loans. The Bank South Corporation, as Amicus Curiae in support of Defendant's Motion, argues that the Court's ruling will have anti-competitive effects.

The statute at issue in this case reads as follows:

> 25–317 Refunds upon prepayment of loans
>
> Notwithstanding the provisions of any contract to the contrary, a borrower may at any time *prepay* all or any part of the unpaid balance to become payable under any installment contract. If the borrower *pays* the time balance in full before maturity, the licensee shall refund to him a portion of the prepaid interest, calculated in complete even months (odd days omitted), as follows: The amount of the refund shall represent at least as great a proportion of the total interest as the sum of the periodical time balance after the date of prepayment bears to the sum of all periodical time balances under the scheduled payments in the original contract. Where the amount of the refund due to anticipation of payment is less than $1, no refund need be made: Provided, further, that if the borrower has been required to purchase other than insurance coverage in a blanket policy when he has paid no acquisition cost, he shall have the option to continue such insurance in force for the balance of the policy period, with all rights transferred to the borrower or his assigns, in which event no refund of insurance premiums shall be made to him.

Ga.Code Ann. § 25–317 (emphasis added). Defendant argues that "prepay" and "pays" refer not merely to prepayments but also to refinancings or renewals of loans. Plaintiff contends that a refinancing should be treated as an acceleration of a debt is treated when a debtor defaults, in which case the Georgia courts have held that Section 25–

317 does not apply and the debtor is entitled to a *pro rata* rebate of all unearned interest. *See Garrett v. G.A.C. Finance Corp.,* 129 Ga.App. 96, 198 S.E.2d 717 (1973).

Georgia law provides that a statute should be interpreted in accordance with the intention of the legislature, "keeping in view, at all times, the old law, the evil and the remedy." Ga.Code Ann. § 102–102(9). In 1953, prior to the enactment of the 1959 Industrial Loan Act, the Georgia legislature appointed a commission to investigate the small loan business on the suggestion that a " 'loan shark' racket" existed in certain sections of the state. 1953 Ga.Laws 467 (Nov.-Dec. Session, December 22, 1953). The preamble to the 1955 statute explains that the Act is meant, *inter alia,* "to prohibit charges not provided therein." 1955 Ga. Laws 431, 432 (Vol. 1) (approved March 4, 1955). It has been held that the Act, which authorizes an exception to the general usury laws for small loan creditors, should be strictly construed. *Georgia Investment Co. v. Norman,* 231 Ga. 821, 825, 204 S.E.2d 740, 744 (1974). *Cf. Diggs v. Swift Loan & Finance Co., Inc.,* 154 Ga.App. 389, 268 S.E.2d 433 (1980) (Georgia Industrial Loan Act is in derogation of common law and therefore should be strictly construed).

The relevant commission regulations, Official Compilation, Rules and Regulations of the State of Georgia, §§ 120–1–14–.06 and .07, promulgated in 1974, read as follows:

120–1–14–.06 Prepayment. When any loan is paid in full before the final scheduled payment date, the consumer may do so without penalty and the creditor shall refund or credit the consumer with a portion of the interest charge. The amount of the refund shall represent at least as great a portion of the total interest charge as the sum of the periodical time balance after the date of prepayment bears to the sum of all periodical time balances under the schedule of payments in the original contract. No refund of less than One ($1.00) Dollar need be made. If such prepayment is made by the debtor other than on a scheduled payment date, the portion of the interest charge refunded shall be made in accordance with law.

120–1–14–.07 Charges for Refinancing. When any debt is renewed or refinanced by any creditor, the consumer shall be entitled to refund or credit of that unearned portion of the interest charge computed as of the date of such refinancing or renewal.

As shown, Regulation 120–1–14–.07 immediately follows a regulation specifying the method, in the case of prepayment, by which interest is to be refunded on a less than *pro rata.* It can thus fairly be inferred that Regulation 120–1–14–.07's reference to "that unearned portion" of the interest charge was meant to exclude a computation, such as was made in the preceding section, by the Rule of 78's. *Cf. Macon v. Walker,* 204 Ga. 810, 51 S.E.2d 633, 635 (1949) (applying maxim *expressio unius est exclusio alterius* to interpretation of city charter).

Given the Georgia Industrial Loan Act's purpose, the strict construction which Georgia courts have applied to it, the statute's general limitation on interest rates charged on such small loans in Section 25–315(a), its general prohibition, in section 25–316, on charges in excess of those authorized, and the Commission regulations, which, according to accepted interpretive principles, appear to exclude anything but *pro rata* computations of interest on rebates and refinancing, it would seem that the use of the Rule of 78's to compute the interest rebate and the refinancing at issue in this case violates Ga.Code Ann. § 25–317.

It is argued nevertheless that the agency charged with enforcing the statute has interpreted it otherwise. Plaintiffs and Amicus Curiae Georgia Legal Services Program, Inc., which takes Plaintiff's side on this motion, have seriously questioned the evidentiary validity of the letter of the Comptroller General, chief administrator of the Industrial Loan Act, submitted by Amicus Georgia Consumer Finance Association. In view of this Court's application below of appropriate principles of administrative law

and statutory construction, an evidentiary hearing on this matter is unnecessary. The Court will assume for purposes of this motion, that it is established that the consistent administrative interpretation of Section 25–317 is that it allows for an interest rebate via the Rule of 78's in a refinancing or renewal. *See* Letter of Comptroller General dated November 24, 1981, Exhibit B to Appearance Amicus Curiae, and Brief, by Georgia Consumer Finance Association, in Support of Motion for Reconsideration.

■ Although generally accorded great weight, an administrative interpretation can be rejected where it is inconsistent with the agency's own regulations. *Cf. Plowden v. Household Finance Corp. of Georgia, (In re Hudson)*, Bank. No. B77–1622A, (Order of May 10, 1979) (N.D.Ga.) (giving no weight to Georgia's Industrial Loan Commission interpretation of Ga.Code Ann. § 25–315(b)). But *cf. Mason v. Service Loan & Finance Co.*, 128 Ga.App. 828, 198 S.E.2d 391 (1973) (admitting that borrower made forceful argument that "level-term" life insurance is prohibited under act, but finding that evaluation of what constitutes "reasonable" insurance is committed to Commissioner). *See also Crane v. Mathews*, 417 F.Supp. 532 (N.D.Ga.1976).

The interpretation advanced by the Commission is buttressed by dicta in two Georgia Court of Appeals opinions, one of which is a concurring opinion. *See Customer Loan Corp. v. Jones*, 100 Ga.App. 653, 659, 112 S.E.2d 362, (1959) (concurring opinion) (dicta), *overruled on other grounds, Chemetron Corp. v. Southern Nitrogen Co.*, 102 Ga.App. 577, 117 S.E.2d 180 (1960); *Brown v. Quality Finance Co.*, 112 Ga.App. 369, 145 S.E.2d 99 (1965) (dicta). This language not only is not binding authority, but it preceded the 1974 promulgation of the regulations quoted above. These regulations, in this Court's view, provide for *pro rata* rebated interest on refinancing and would appear to disallow any previously-sanctioned Rule of 78's computations in such cases.

■ While the Court nevertheless would be loath to upset a settled construction of the law such as has been applied by the Georgia Industrial Loan Commission on the instant issue, and would be reluctant to upset contracts that had been made in reliance upon such an interpretation, the Court's concern over the potential unsettling effect of its June 23, 1981 decision is mitigated by the legislature's enactment, in 1978, of Ga.Code Ann. § 25–9903(f), which provides as follows:

> (f) If a contract is made in good faith in conformity with an interpretation of Chapter 25–3 by the appellate courts of this State or in a rule or regulation officially promulgated by the commissioner after public hearings, no provision in this section imposing any penalty shall apply, notwithstanding that after such contract is made, such rule or regulation is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

This section evinces a recognition on the part of the legislature that the statute is ambiguous in certain sections. It in no way discourages judicial or other valid authority from seeking interpretations of the statute which further its purpose, despite prior inconsistent interpretations. *See generally*, Moore, *supra*, at 291. The Court finds it significant that this section was enacted after the Georgia Supreme Court opinion in *Georgia Investment Co. v. Norman*, 231 Ga. 821, 824, 204 S.E.2d 740, 743 (1974), which held that, despite the interpretation and practice of the Industrial Loan Commission, the charge of a $1 notary fee by the lender was unauthorized and violated the Act.

The Court believes that the analysis made in its June 23, 1981 Order remains sound. It concludes that in enacting Section 25–317 the legislature made a specific exception to the general limitation of Section 25–315(a) on interest and to the general prohibition in Section 25–316 on further charges, with a view toward compensating a lender for lost profits when a debtor voluntarily prepays his loan. Georgia case law has established that where a creditor accelerates on default of a debtor, a *pro rata* interest rebate is required. *Garrett v. G.A.C. Finance Corp.*, 129 Ga.App. 96, 198 S.E.2d 717 (1973). In a

refinancing by an original lender, where both sides must agree to an extension of credit and the lender presumably is not losing profits, the Court sees no reason to depart from the general mandate of Section 25–315(a) and 25–316. The act already provides for "add on" interest, earned uniformly on the entire original amount of the loan, without regard to installment reductions in the outstanding balance. *See* Ga.Code Ann. § 25–315(a) and *Moore, supra*, at 286, 292.

Such a construction of the statute furthers its general remedial objective of curbing abuses in the small loan business. The Court believes that it fulfills the spirit of the Act to construe Section 25–317 as a specific exception to the rule of no further charges in the case where a debtor's voluntary prepayment results in a loss of profits to the lender. Although the Court recognizes that a refinancing may also be voluntary in the sense that a debtor may be motivated by the desire for additional capital, rather than by inability to meet payments under the original loan, a refinancing by the same lender does not necessarily result in loss of profits to that lender. Solicitude for the lender in such a case does not seem merited.

■ Amicus Bank South argues that the Court's decision will have an anti-competitive effect because it will encourage debtors to adhere to their original lenders in a refinancing. Amicus claims that refinancing by a new lender would result in a "prepayment" of the original loan, with a Rule of 78's interest rebate. The disparity of cost between a *pro rata* rebate by the original lender and a Rule of 78's rebate by a new lender would mean, according to Amicus, that no creditworthy debtor would seek out a second lender. Amicus contends that the Court cannot presume that the legislature intended such an anti-competitive effect.

It would be somewhat ironic for this Court to hold that in the interest of competition it should sustain an interpretation of a statute meant to correct lenders' abuses that would result in greater costs to the debtor in all cases of refinancing or renewal, rather than a result that would allow debtors in certain cases a less costly alternative. More significantly, however, the legislature itself has in this same act distinguished between original and second lenders with the result that a renewal or refinancing by an original lender is less costly than if effected by a second lender. Section 25–315(b) provides that in addition to basic interest a lender may:

charge, contract for, receive or collect at the time the loan is made, a fee in an amount not greater than eight percent of the first $600 of the face amount of the contract, plus four percent of the excess: Provided, however, that such fee shall not be charged or collected on that part of a loan which is used to pay or apply on a prior loan, or installment of a prior loan from the same licensee to the same borrower made within the immediately preceding six months period. . . . If a borrower prepays his entire loan to a licensee and within the following 15 days makes a new loan with that licensee, (and if this is done within six months period or the two months period above described, as may be applicable), the fee may be charged only on the excess by which the face amount of the new contract exceeds the amount which the borrower repaid to that licensee within the said 15-day period.

Thus the legislature has limited the loan fees an original lender can charge when part or all of a prior loan is repaid and has made no similar provision for a second lender. Surely this section has the same allegedly "anti-competitive" effect as the Court's decision. There is no reason to believe that the legislature evaluated its priorities in a different fashion in enacting Section 25–317. *Cf. Jenkins v. State*, 230 Ga. 726, 727, 199 S.E.2d 183, 184 (1973) (sections of code relating to same subject must be construed together), *reversed on other grounds*, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974); *see also* Section 25–310 (providing specifically that a renewal or a refinancing is not a "final entry" for purposes of required recordkeeping). It seems to this Court that in enacting Section

**1022**

25-315(b) the legislature was concerned with the possible exorbitant and unmerited exaction of profits by the original lender in a renewal or refinancing. The Court has the same concern in the instant case. Although there is nothing to indicate that the legislature specifically considered the "anti-competition" problem, the clear thrust and underlying policy of this legislation is to provide some protection to debtors in small loan transactions, while there is no indication that solicitude for "second" lenders was even a minor policy consideration.

■ Defendant also argues that judicial interpretation of the Retail Installment and Home Solicitation Sales Act, Ga.Code Ann. §§ 96–901 to –914, first enacted in 1967, requires a different result. *See Bell v. Loosier of Albany, Inc.*, 137 Ga.App. 50, 222 S.E.2d 839 (1975), *vacated* 237 Ga. 585, 229 S.E.2d 374 (1976), *on remand*, 140 Ga.App. 393, 231 S.E.2d 142 (1976). The Court believes that judicial construction of a different statute, enacted at a different time, is weak evidence of legislative intent. Indeed, in the case on which Defendant relies, the lower court, in permitting a result more favorable to the lender than that ultimately allowed by the Supreme Court, distinguished the language, purpose and history of the Retail Installment and Home Solicitation Sales Act from the Georgia Industrial Loan Act. 137 Ga.App. at 55, 222 S.E.2d at 843.

For the foregoing reasons, the Court DENIES IN PART Defendant's Motion to Reconsider its June 23, 1981 ruling that Defendant's Rule of 78's interest computations violated Section 25–317. However, in view of the appellate courts' language in *Customers Loan Corp. v. Jones*, 100 Ga.App. 653, 112 S.E.2d 362 (1959) (concurring opinion), *overruled on other grounds, Chemetron Corp. v. Southern Nitrogen Co.*, 102 Ga.App. 577, 117 S.E.2d 180 (1960) and *Brown v. Quality Finance Co.*, 112 Ga.App. 369, 145 S.E.2d 99 (1965) which is contrary to this Court's holding and the lack of evidence of bad faith on the part of Defendant, the Court finds that Ga.Code Ann. § 25–9303(f) applies to bar any penalty to Defendant for such violation. Therefore,

Defendant's Motion is GRANTED IN PART so that no penalty may be exacted for such violation.

II. *Plaintiff's Motion to Alter or Amend*

Since a final judgment has not been entered in this case, this motion is more properly styled a motion to reconsider. Plaintiff has asked the Court to reconsider both its March 20, 1980 ruling that the post-maturity interest charged in the agreement at issue was not a "charge" required to be disclosed under 12 C.F.R. § 226.8(b)(4) and its January 26, 1981 ruling that the agreement at issue in this case did not violate Ga.Code Ann. § 109A–9–204(2). Plaintiff also asks the Court to award attorney's fees for Plaintiff's prevailing on Defendant's Section 25–317 counterclaim.

The Court notes that Plaintiff has already moved this Court once before to reconsider its March 20, 1980 ruling on post-maturity interest. *See* Order of June 11, 1980. The Court finds that this issue was decided adversely to Plaintiff in *Whitfield v. Termplan Co., Inc.*, 651 F.2d 383 (5th Cir. 1981). There is no reason for the Court to exercise its discretion to grant a stay, as Plaintiff alternatively requests, with regard to this ground of the motion.

■ Plaintiff also asks this Court to reconsider its January 26, 1981 ruling that the agreement at issue in this case did not violate Ga.Code Ann. § 109A–9–204(2). Although this Court recognizes that there is additional *contra* authority on this point in this District, it finds that Plaintiff has offered no binding precedent or new evidence which justifies a change in this Court's view. Plaintiff has alternatively requested a stay of this action, in view of the pendency of *Brown v. Termplan*, C78–330A (N.D. Ga.1981) before the Eleventh Circuit. Since it appears to this Court that it is entirely possible that other issues decided today and previously in this case may be appealed, it would not serve the ends of efficient judicial administration for the Court to exercise its discretion to stay this case until *Brown* is decided.

■ Finally, Plaintiff seeks attorney's fees for prevailing in part on Defendant's state law counterclaim. Plaintiff has not prevailed on any of his Truth-In-Lending claims. With regard to Plaintiff's federal claims, therefore, this is not a "successful action to enforce the foregoing liability" within the meaning of 15 U.S.C. § 1640. *Cf. Lacy v. General Finance Corp.*, 651 F.2d 1026 (5th Cir. 1981) (successful T–I–L plaintiff unable to recover for unsuccessful defense against counterclaim). Plaintiff's request is therefore DENIED.

Plaintiff's "Motion to Alter or Amend" is DENIED and Plaintiff's Request for Attorney's Fees is DENIED.

### III. *Plaintiff's Motion to Allege New Violations*

■ *Friend v. Termplan, Inc.*, 651 F.2d 1012 (5th Cir. 1981), which held that use of the term "face amount" in T–I–L–A disclosures was an inconsistent or misleading state disclosure that should not have been intermingled with federal disclosures, is cited by Plaintiff as grounds for this motion. *Friend*, however, does not pertain to the instant case. No documents submitted to this Court indicate that the term "face amount" was used in any Truth-In-Lending disclosures in the loan agreement at issue. In fact, the inconsistent state disclosure section of the loan agreement *does* include this term. It would seem, therefore, that the instant case is precisely the opposite of the situation at issue in *Friend*, 651 F.2d at 1014. Plaintiff's Motion is DENIED.

In summary, Defendant's Motion for Reconsideration is DENIED IN PART insofar as it asks this Court to change its ruling on Defendant's violation of Ga.Code Ann. § 25–317 and GRANTED IN PART insofar as the Court finds that no penalties may attach to such violation. Plaintiff's Motions to "Alter or Amend" and to Allege New Violation are DENIED in their entirety.